**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

| | |
|---|---|
| ALANA SCHMITT, Individually and as representatives of a class of participants and beneficiaries on behalf of the Andrus Wagstaff, PC 401(k) Profit Sharing Plan and all other similarly situated individual account retirement plans, <br> 6640 West 54th Place <br> Arvada CO 80002S <br><br>         Plaintiff, <br><br> vs. <br><br> NATIONWIDE LIFE INSURANCE COMPANY <br> c/o CORPORATION SERVICE COMPANY <br> 50 WEST BROAD STREET SUITE 1330 <br> COLUMBUS OH 43215 <br><br> and <br><br> NATIONWIDE BANK <br> c/.o W. SIDNEY DRUEN, <br> ONE NATIONWIDE PLZ <br> COLUMBUS,OH 43216 <br><br> and <br><br> NATIONWIDE BANK <br> c/o CORPORATION SERVICE COMPANY <br> 50 WEST BROAD STREET SUITE 1330 <br> COLUMBUS OH 43215 <br><br> and <br><br> NATIONWIDE TRUST COMPANY, FSB <br> c/o CORPORATION SERVICE COMPANY <br> 50 WEST BROAD STREET SUITE 1330 <br> COLUMBUS OH 43215 <br><br> and | Civil Action No. <br><br> **COMPLAINT – CLASS ACTION** <br><br> JURY TRIAL DEMANDED |

NATIONWIDE TRUST COMPANY, FSB
c/.o W. SIDNEY DRUEN
ONE NATIONWIDE PLZ
COLUMBUS,OH 43216

      Defendants.

Plaintiff Alana Schmitt, individually and as representative of participants and

beneficiaries of the Andrus Wagstaff, PC 401(k) Profit Sharing Plan (the "AW Plan"), brings this

action under 29 U.S.C. §1132(a)(3) as representative of and on behalf of the Plan and on behalf

of all other similarly situated individual account plans (the "Plans") as that term is defined in 29

U.S.C. § 1002(34)[1] against Defendant Nationwide Life Insurance Company, Nationwide Bank

and Nationwide Trust Company, FSB (collectively "Nationwide" or "Defendants") for

knowingly participating in violations of 29 U.S.C. § 1106(a). Plaintiff, on behalf of the AW Plan

and all similarly situated individual account plans, is seeking the return of the excessive and

unreasonable asset-based fees charged by Nationwide for recordkeeping and administrative

services, and to prevent Nationwide from charging those excessive fees in the future.

## INTRODUCTION

1.      Plaintiff is a participant in the AW Plan. At the end of 2015, the AW Plan had 27

participants and $1,100,000 in plan assets. Small plans such as the AW Plan have the same legal

and regulatory obligations as Fortune 500 companies, but lack the expertise to navigate the

---

[1] The Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§1001–1461.

labyrinth of federal regulations governing employee benefit plans or the time and resources to seek out and employ expert financial and legal consultants to understand the complexities of the marketplace.

2.      The AW Plan contracted with Nationwide under Nationwide's Retirement Flexible Advantage Retirement Plans Program to provide recordkeeper and other services for a fee of one percent per year of the AW Plan assets. Nationwide describes the fee in the annual AW Plan participant fee disclosure required by 29 CFR 2550.404a-5 as follows: "AMC/Net Asset Fee - This is a fee charged by Nationwide to recover expenses that may include compensation paid to financial advisors, administrative service fee payments to Administrative Firm/Authorized Representative, and any expense credits issued to the plan. Additionally, this fee pays for services provided by Nationwide including access to a variety of investment options, the recordkeeping platform, customer service, etc."

3.      29 U.S.C. §§ 1106(a) and 1108(b)(2) generally prohibit a "party in interest" from providing services to a qualified retirement plan like the AW Plan unless the contract or arrangement is reasonable and no more than reasonable compensation is paid by the plan to the party in interest.  If a service contract fails to comply with 29 U.S.C. § 1108(b)(2) including the detailed disclosure requirements of 29 CFR 2550.408b-2(c), the contract for services will constitute a prohibited transaction under 29 U.S.C. § 1106(a)(1)(C). Furthermore, if the contract calls for the payment of an unreasonable fee, adequate disclosure of that fee cannot save the arrangement from violating the provisions of 29 U.S.C § 1108(b)(2) and violating the prohibited transaction rules of 29 U.S.C. § 1106(a)(1)(C).

4.      A recent survey by NEPC, an independent investment consulting firm, found that

the median recordkeeping cost of 113 plans was $64 per plan participant in 2015.[2] As a result of Nationwide's asset-based fees, in 2014 the AW Plan paid approximately $9,400 for recordkeeping services for a plan that had only 15 participants at the end of the year, amounting to $625 per participant. In 2015, recordkeeping fees increased to $11,000 for 22 participants amounting to $500 per participant. Nationwide's fees are almost 10 times more than the reasonable amount of compensation that should have been charged to the AW Plan.

5.      While the one percent fee for recordkeeping paid by the AW Plan and other small plans seems insignificant, the negative financial impact on the efforts by these workers to save for retirement is significant. In defined contribution plans, employees' benefits at retirement "are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1825 (2015).

6.      Because retirement savings in defined contribution plans grow and compound over the course of the employee participants' careers, poor investment performance and excessive fees can dramatically reduce the amount of benefits available when the participant is ready to retire. Over time, even small differences in fees and performance compound and can result in vast differences in the amount of savings available at retirement. As the Supreme Court has explained, "[e]xpenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan." *Tibble*, 135 S. Ct. at 1825.

7.      The impact of excessive fees on employees' and retirees' retirement assets is dramatic. The U.S. Department of Labor has noted that a 1% higher level of fees over a 35-

---

[2] https://cdn2.hubspot.net/hubfs/2529352/Blog/2015_10_nepc_2015_defined_contribution_plan_and_fee_survey-_what_a_difference_a_decade_makes_copy1.pdf?t=1495567038751

year period makes a 28% difference in retirement assets at the end of a participant's career.
U.S. Dep't of Labor, A Look at 401(k) Plan Fees, at 1–2 (Aug. 2013).[3]

8.      According to the Nationwide website[4], Defendants service 37,000 retirement
plans and 2,400,000 participants and claim to manage over $114 billion in retirement assets
under the Nationwide Retirement Flexible Advantage Retirement Plans Program. Based on the
1% fee charged to the AW Plan, Nationwide potentially earns over $1 billion a year in excessive
compensation at the expense of the individual plan participants. These excessive fees violate a
fundamental principle of ERISA: that no contract for services can charge any more than
reasonable compensation in relation to the service being provided.

9.      Although the AW Plan fiduciaries may have breached their fiduciary duties to the
AW Plan by entering into the Nationwide contract, the U.S. Supreme Court made it clear in
*Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 245 (2000), that 29
U.S.C. § 1132(a)(3) authorizes a civil action against a non-fiduciary who participates in a
transaction prohibited by 29 U.S.C. § 1106(a).

10.      Nationwide was the target of a class action lawsuit for failing to disclose indirect
compensation received from mutual funds to retirement plans. After settling that action in 2014,
Nationwide continued to charge Plans unreasonable fees for recordkeeping and administration
but now discloses its unreasonable fees in its 29 CFR 2550.408b-2 disclosures. However, merely
disclosing that a Plan is paying an unreasonable fee does not make the fee reasonable under 29
CFR 2550.408c-2.

11.      To remedy Nationwide's violations of ERISA's prohibition against charging
unreasonable fees to a qualified plan and its retirement plan investors, Plaintiff,   as a

---

[3] Available at https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resource-center/publications/401kFeesEmployee.pdf
[4] https://www.nationwide.com/why-choose-nationwide-retirement-plans.jsp

representative of the AW Plan and other Plans enrolled in the Nationwide Retirement Flexible Advantage Retirement Plans Program, brings this action on behalf of the Plans under 29 U.S.C. §1132(a)(3) seeking restoration to the Plans of all losses resulting from the excessive and unreasonable fees charged by Defendants for recordkeeping services under 29 U.S.C. §1108(b). In addition, Plaintiff seeks such other equitable or remedial relief for the Plans as the Court may deem appropriate.

## JURISDICTION AND VENUE

12. This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331, because it is an action under 29 U.S.C. §1132(a)(3).

13. This District is the proper venue for this action under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b), because Defendants are all headquartered in Columbus Ohio and therefore are residents of this district.

## THE PARTIES

**Plaintiff Schmitt**

14. Plaintiff Alana Schmitt, is a citizen of Colorado, and a participant in the AW Plan as defined in 29 U.S.C. §1002(7). Through the AW Plan, she is invested in the Neuberger Berman International Select fund, the Principal Mid Cap Fund, the Wells Fargo Discovery Fund and the Vanguard Windsor II fund.

**The Andrus Wagstaff, PC 401(K) Profit Sharing Plan**

15. The Andrus Wagstaff, PC 401(k) Profit Sharing Plan is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. §1002(2)(A) and §1002(34).

16. The AW Plan is established and maintained under a written document in accordance with 29 U.S.C. §1102(a)(1).

17.     Employees of Andrus Wagstaff, PC are eligible to participate in the AW Plan. Benefits under the AW Plan, which are based upon deferrals of employee compensation, employer matching contributions and performance of investment options net of fees and expenses. The AW Plan is the only employer-provided source of retirement plan income for employees of Andrus Wagstaff.

18.     The AW Plan is one of 37,000 plans for which Nationwide performs similar recordkeeping and other administrative services. The AW Plan is typical of defined contribution, individual account plans serviced by Nationwide under its Nationwide Retirement Flexible Advantage program.

**Defendants**

19.     Nationwide Life Insurance Company is a mutual life insurance company with its principal place of business in Columbus, Ohio, and provides administrative services to qualified retirement plans.

20.     Nationwide Bank is a federally charted bank with its principal place of business in Columbus, Ohio. Nationwide Bank is a wholly owned subsidiary of Nationwide Financial Services, Inc., an affiliate of Nationwide Life Insurance Company, and serves as the trustee for the AW Plan.

21.     Nationwide Trust Company, FSB is a division of Nationwide Bank, with its principal place of business in Columbus, Ohio.  Nationwide Trust Company serves as custodian for the AW Plan.

## FACTUAL ALLEGATIONS

**Plan Recordkeeping**

22.     Recordkeeping is a necessary service for every defined contribution plan.

Recordkeeping for 401(k) plans like the AW Plan and the proposed class of Plans and their participants is fundamentally the same as keeping records for a brokerage account with a few additional points of data. It is a system where costs are driven purely by the number of inputs and the number of transactions. In essence, it is a computer-based bookkeeping system. The greatest cost incurred in incorporating a new retirement plan into a recordkeeper's system is for upfront setup costs.

23. After the Plan account is set up, individual accounts are opened by entering the participant's name, age, SSN, date of hire and marital status. The system also records the amount of a participant's compensation he or she wished to contribute each pay period through automated payroll deductions. Participants can go on line and change their contribution rate at any time.

24. Similar to a brokerage account, the system also records and tracks which investments among the twenty or thirty investment choices available under the plan a participant has chosen to invest his or her contributions. All of the investment choices available to participant-directed retirement plans like the AW Plan and the putative class are already connected to the recordkeeper's system, so that all information required of the investment fund downloads to the recordkeeper's system automatically.

25. Participants can buy and sell investments and change their investment instructions for new contributions on-line at any time. Defendants charge certain transaction-based fees, for example: (i) for each quarterly statement ($0.75 each); and (ii) for each transfer out of a fund ($6.00 per exchange). The system also records withdrawals and distributions and keeps a running daily balance of each participant's account by extracting data from other reporting systems, like Morningstar.

26.     Recordkeeping services for a qualified retirement plan, like the AW Plan, are essentially fixed and largely automated. The cost of recordkeeping and administrative services depends on the number of participants, not the amount of assets in the participant's account. Thus, the cost of providing recordkeeping services to a participant with an average account balance of $100,000 is the same as the cost of recordkeeping for a participant with $1,000 in her retirement account. For this reason, responsible recordkeepers charge recordkeeping fees for each plan participant rather than as a percentage of plan assets. Otherwise, as plan assets increase through participant contributions or investment gains, the recordkeeping revenue increases without any change in the services provided.

**The Nationwide Retirement Flexible Advantage Retirement Plans Program**

27.     Nationwide advertises itself as a provider of retirement plan services. Nationwide's website states: "We Are Helping America's Workers Prepare for and Live in Retirement." According to the Nationwide website, as of December 31, 2016 Nationwide is the recordkeeper for more than 37,000 plans serving more than 2,400,000 participants with over $114 billion in retirement assets.[5] The Nationwide website also offers fiduciary education to plan sponsors.[6]

28.     Nationwide offers the Nationwide Retirement Flexible Advantage Retirement Plans Program for plans with a minimum of $50,000 in first year plan assets.[7] The AW Plan is enrolled in the Nationwide Retirement Flexible Advantage Retirement Plans Program.

29.     The Nationwide Retirement Flexible Advantage Retirement Plans Program

---

[5] https://www.nationwide.com/why-choose-nationwide-retirement-plans.jsp
[6] https://www.nationwide.com/401k-fiduciary-education.jsp?wt.mc_id=NF_Desktop_RP-
Private_Banner_NA_NA_NA_NA_NAXNA_NA_NA&wt.tsrc=NF_Banner_RP-Private_Desktop_NA
[7] https://nationwidefinancial.com/#!/products/retirement-plans/programs/flexible-
advantage?utm_medium=cpm&utm_campaign=nf&utm_source=google&utm_content=brand:na:google:na:mckinne
y:na:zerooptions-ophobia2016&quotetype=&type=na&ui1002=&ui3001=

features more than 1,300 institutional investment options. A complete fund lineup, which includes performance and expense data, appears on the Nationwide website.[8]

30.     Under Fees and expenses, Nationwide identifies the following services:

o Program fee: Provides plan services such as online access, educational materials, employee statements, transaction processing and maintaining employee records.

o Financial advisor expense: Provides consulting, services and support individualized for the plan.

o Administration expense: Provides plan testing, compliance and filing services.

31.     One of the "Key features" of the Nationwide Retirement Flexible Advantage Retirement Plans Program is "Nationwide ClearCredit," which is "a feature of the Nationwide Retirement Flexible Advantage Program that reduces the asset fee based on payments from funds, for participants who have invested in those funds. This feature allows participants to benefit from the revenue-sharing arrangements offered by their selected funds."[9] In other words, Nationwide offsets its Net Asset Fee by the amount of certain fees paid to Nationwide by various mutual funds.

32.     According to the Nationwide website, other benefits of ClearCredit include:

o Keeps recordkeeping fees consistent across participants, regardless of which funds they choose.

o Reduces participant asset charges daily.

**Fees Actually Charged under the Nationwide Retirement Flexible Advantage Program**

33.     Although the Nationwide Retirement Flexible Advantage Program website emphasizes efficiency and cost savings, in fact, the Nationwide Retirement Flexible Advantage

---

[8] https://nationwidefinancial.com/media/pdf/performance/PNX-0153AO.pdf
[9] https://nationwidefinancial.com/#!/products/retirement-plans/programs/flexible-advantage/option-clearcredit

Program takes advantage of the lack of sophistication and bargaining power of the AW Plan and other similarly situated plans by unscrupulously adding 75 to 100 basis points (0.75% to 1.00%) to the cost of every investment option available to retirement plan investors in the AW Plan and the Plans. If, for example, the expense ratio for a mutual fund such as the American Funds EuroPacific Growth Fund as disclosed in the fund's prospectus is 50 basis points (0.50%), Defendants added 100 basis points (one percent) to that expense so that the investor is paying 1.5% to invest in that fund.

34.     The "AMC/Net Asset Fee" is "a fee charged by Nationwide to recover expenses that may include compensation paid to financial advisors, administrative service fee payments to Administrative Firm/Authorized Representative, and any expense credits issued to the plan. Additionally, this fee pays for services provided by Nationwide including access to a variety of investment options, the recordkeeping platform, customer service, etc."  The Net Asset Fee, however, does far more than reimburse Nationwide for expenses actually incurred, and provides Nationwide a substantial profit measured as a percentage of a plan's assets.

35.     The following chart illustrates the markups charged by Nationwide on the 40 investment options offered by the AW Plan:

| Fund | Fund Net Expense ratio | Nationwide AMC/Net Asset fee | Total Fees | % Fee Increase |
|---|---|---|---|---|
| NW INV Dest Aggr Inst | 0.49% | 1.00% | 1.49% | 204% |
| NW INV Dest CNSRV Inst | 0.48% | 1.00% | 1.48% | 208% |
| NW Inv Dest Mod Aggr Inst | 0.51% | 1.00% | 1.51% | 196% |
| NW Inv Dest Mod Cnsrv Inst | 0.49% | 1.00% | 1.49% | 204% |
| NW Inv Dest Mod Inst | 0.49% | 1.00% | 1.49% | 204% |
| Vngrd Trgt Rtrmt 2010 Inv | 0.14% | 1.00% | 1.14% | 714% |
| Vngrd Trgt Rtrmt 2015 Inv | 0.14% | 1.00% | 1.14% | 714% |
| Vngrd Trgt Rtrmt 2020 Inv | 0.14% | 1.00% | 1.14% | 714% |
| Vngrd Trgt Rtrmt 2025 Inv | 0.15% | 1.00% | 1.15% | 666% |

| | | | | |
|---|---|---|---|---|
| Vngrd Trgt Rtrmt 2025 Inv | 0.15% | 1.00% | 1.15% | 666% |
| Vngrd Trgt Rtrmt 2030 Inv | 0.15% | 1.00% | 1.15% | 666% |
| Vngrd Trgt Rtrmt 2035 Inv | 0.15% | 1.00% | 1.15% | 666% |
| Vngrd Trgt Rtrmt 2040 Inv | 0.16% | 1.00% | 1.16% | 625% |
| Vngrd Trgt Rtrmt 2045 Inv | 0.16% | 1.00% | 1.16% | 625% |
| Vngrd Trgt Rtrmt 2050 Inv | 0.16% | 1.00% | 1.16% | 625% |
| Vngrd Trgt Rtrmt 2055 Inv | 0.16% | 1.00% | 1.16% | 625% |
| Vngrd Trgt Rtrmt 2060 Inv | 0.16% | 1.00% | 1.16% | 625% |
| Vngrd Trgt Rtrmt Inc | 0.14% | 1.00% | 1.14% | 714% |
| Vngrd Wlngtn Inv | 0.26% | 1.00% | 1.26% | 384% |
| DE Divrs Inc Inst | 0.65% | 0.85% | 1.50% | 130% |
| MetWest Ttl Rtn Bd I | 0.44% | 1.00% | 1.44% | 227% |
| Opp Intl Bd Y | 0.77% | 0.80% | 1.57% | 103% |
| Vngrd Infl Prtct Sec Inv | 0.20% | 1.00% | 1.20% | 500% |
| AmFds Cap Wld Gr Inc R6 | 0.50% | 1.00% | 1.5% | 200% |
| NeuBer Intl Sel Inst | 0.90% | 0.90% | 1.80% | 100% |
| Opp Devl Mkt Y | 1.07% | 0.80% | 1.87% | 75% |
| AmFds Gr Fd Am R6 | 0.33% | 1.00% | 1.33% | 303% |
| TRowePr Eq Inc | 0.66% | 0.85% | 1.51% | 130% |
| Vngrd Mrgn Gr Inv | 0.40% | 1.00% | 1.40% | 250% |
| Vngrd Wndsr II Inv | 0.34% | 1.00% | 1.34% | 294% |
| GdmnScs MdCap Val Inst | 0.75% | 0.85% | 1.60% | 113% |
| Prncpl MdCap Inst | 0.67% | 0.90% | 1.57% | 134% |
| Vngrd ST Bd Indx Adml | 0.09% | 1.00% | 1.09% | 1,111% |
| PIMCO Stk PLUS Sm Inst | 0.69% | 1.00% | 1.69% | 145% |
| Vngrd Explr Inv | 0.49% | 1.00% | 1.49% | 204% |
| WF SmCo Val Inst | 1.00% | 0.85% | 1.85% | 85% |
| Prudntl Jnisn Natrl Rsrc Z | 0.92% | 0.75% | 1.67% | 81% |
| Vngrd REIT Indx Adml | 0.12% | 1.00% | 1.12% | 833% |

36. The Nationwide fee increases the cost of every investment on the Nationwide Retirement Flexible Advantage platform by 75% to 1,111%. The additional fees are born solely by the plan participants. Ironically, the Comparative Chart of Investment Options prepared for the plan participants by Nationwide contains the following caution immediately above the definition of the AMC/Net Asset Fee: "The cumulative effect of fees and expenses can substantially reduce the growth of your retirement savings."

37. Moreover, where the Nationwide fee is less than 1%, Nationwide receives the

balance of the 1% fee from the mutual fund provider under a practice called revenue sharing. For example, the Wells Fargo Discovery Fund has an expense ratio of 86 basis points (0.86%), meaning that a retirement plan investor pays just less than one percent of his or her investment as the cost of investing in the fund. Nationwide charges the participant an additional 85 basis points to invest in that fund. However, Nationwide receives 15 basis points (0.15%) from the Wells Fargo Discovery Fund as revenue sharing, so that Nationwide receives one percent of every dollar that participants invest in the Wells Fargo Discovery Fund.

38.     The fee discrepancy is most pronounced when applied to the passively managed index and target date funds. For example, Vanguard charges 9 basis points (0.09%) to manage and administer the Vanguard Short Term Bond Index Fund (Admiral Class) investments. In contrast, Nationwide charges 100 basis points (1%) to track a participant's investment in the Vanguard Short Term Bond Index Fund on the Nationwide platform.

39.     Even more egregiously, Nationwide adds the 1% fee to Nationwide's own Destination funds offered as investment options. The Nationwide Destination mutual funds are funds which invest 100% in other Nationwide mutual funds and financial products. To invest in the Nationwide Investor Destination Aggressive Fund, Nationwide charges "other expenses" of 16 basis points (.16%), which include expenses described as shareholder servicing and sub-transfer agent fees. Nationwide also charges Destination Aggressive Fund investors an acquired funds fee of 35 basis points (.35%), which is paid by the Destination Aggressive Fund to the other Nationwide funds the Destination Aggressive Fund has invested in for management and recordkeeping expenses. Nationwide thus receives 100% of all expenses paid by the Destination Funds investors in addition to the added 1% fee.

40.     Because Nationwide charges an asset-based fee of one percent of the value of

each participant's account maintained on their platform for these services, plan participants pay wildly divergent amounts for the same services. For example, Plaintiff, with an account value of $37,305 as of December 31, 2016 paid $373 for recordkeeping for that year while a participant with an account balance of $3,700 would have paid $37 for exactly the same services.

41. Nationwide has charged other Plans unreasonable fees to serve as the recordkeeper. For example, the EXAL Corporation 401(k) Plan, with 431 active participants and average assets of $20.4 million, paid Nationwide $134,673 in direct and indirect compensation for recordkeeping in 2015, or $323 per participant. Also in 2015, the Claas of America, Inc. Employees' Savings Plan, with 310 active employees and $21 million in total assets, paid Nationwide $127,900 in direct compensation and undisclosed indirect compensation, or $414 per participant. The JMAC, Inc. 401(k) Plan , with $21 million in assets and 634 active participants, paid $142,448 in direct compensation for recordkeeping in 2015, or $224 per participant. The Rocky Brands, Inc. 401(k) Plan, with 527 active participants and average assets of $25.8 million, paid Nationwide $60,056 in direct compensation and undisclosed indirect compensation, or $114 per participant.

42. If Nationwide charged the median fee, the AW Plan (and similarly situated Plans) would pay $1,728 per year for recordkeeping services, rather than $11,000 per year, saving the plan participants 84 basis points (0.86%) per year. Plaintiff would have paid $53 in fees in 2015 rather than $373, a savings of $320.

43. Defendants have also increased certain fund expenses for their own benefit and to the detriment of the plan participants. For example, the annual participant fee disclosure required by 29 CFR 2550.404a-5, and the quarterly participant account statements, both prepared by Defendants, state respectively that the expense ratio for the Wells Fargo Small

Cap Value Fund is 1.00% (participant fee disclosure) or 1.15% (Plaintiff's quarterly statement for the fourth quarter of 2016). However, the prospectus for the Wells Fargo Small Cap Value Fund states the expense ratio is only 90 basis points (0.90%) after fee waivers.

44.    The following chart illustrates the differences between the fund expenses disclosed in the prospectuses verses the amount disclosed to plaintiff and other Plan participants by Nationwide.

| Fund | Disclosure Fund Expense | Prospectus Fund Expense | Difference |
|------|------|------|------|
| Vngrd Trgt Rtrmt Inc | 0.14% | .13% | .01% |
| Vngrd Wlngtn Inv | 0.26% | .25% | .01% |
| DE Divrs Inc Inst | 0.65% | .64% | .01% |
| AmFds Cap Wld Gr Inc R6 | 0.50% | .45% | .05% |
| NeuBer Intl Sel Inst | 0.90% | .80% | .10% |
| Vngrd Mrgn Gr Inv | 0.40% | .38% | .02% |
| Vngrd Wndsr II Inv | 0.34% | .33% | .01% |
| Vngrd ST Bd Indx Adml | 0.09% | .07% | .02% |
| Vngrd Explr Inv | 0.49% | .46% | .03% |
| WF SmCo Val Inst | 1.00% | .90% | .10% |

45.    Thus, according to the fee disclosure prepared by Nationwide (which is a fiduciary obligation under 29 U.S.C. § 1104), Defendants are realizing additional fees of 1 to 10 basis points (.01-.10%) on the amount invested in the above funds in addition to the 1.00% fee being charged by Defendants for recordkeeping services.

**Reporting Failures under 29 CFR 2550.408b-2**

46.    Andrus Wagstaff as the AW Plan administrator is responsible for preparing and filing with the Department of Labor the annual return for the AW Plan on Form 5500-SF,

the form for plans with fewer than 100 participants. In order to allow the AW Plan administrator to accurately complete the form, Nationwide was obligated by 29 CFR 2520.103-1 to provide information to the Plan Administrator in order to file the Form 55-SF. On information and belief, Defendants were contractually obligated to prepare and file the Plan's Annual Return.

47.    In addition, Defendants were and are required by 29 CFR 2550.408b-2(c) to disclose to the plan administrator all compensation expected to be received by Defendants in connection with services provided to the Plan, a description of all services provided, and a description of the allocation of income among affiliated companies and subcontractors.

48.    The AW Plan 5500-SF filed for 2014 and 2015 shows no administrative or other fees were paid by the AW Plan to anyone. This is clearly incorrect because the participant fee disclosures state Nationwide is charging its AMC/Net Asset Fee "to recover expenses that may include compensation paid to financial advisors, administrative service fee payments to Administrative Firm/Authorized Representative, and any expense credits issued to the plan. Additionally, this fee pays for services provided by Nationwide including access to a variety of investment options, the recordkeeping platform, customer service, etc."

49.    In an apparent attempt to hide the actual dollar amount of fees being paid by the AW Plan and the individual benefit plan investors, Nationwide failed to disclose the actual amount paid to Nationwide for administrative services in violation of its reporting obligations under 29 CFR 2520.103-1.

50.    The Form 5500 reporting failures, which appear deliberately intended to conceal the amount of Defendants' actual compensation for services provided to the Plan, and

the significant reporting errors noted with respect to the participant fee disclosure required by 29 CFR 2550.404a-5, suggest that Defendants have also failed to comply with the disclosure requirements of 29 CFR 2550.408b-2.

**Nationwide Trust Company**

51.     Nationwide Trust Co. serves as trustee for many of the plans on the platform.  As trustee Nationwide Trust Co. is supposed to hold all plan assets, effect all securities transactions and keep trust records showing all the actual trades at the trust level independent of Nationwide's recordkeeping system which keeps records at the individual participant level. The records of Nationwide and Nationwide Trust Co. should be periodically reconciled. The purpose of this two-tiered record keeping system is to make sure the assets held by the trust company match the assets recorded in the individual participant's accounts.

52.     Upon knowledge and belief, Nationwide Trust does not keep separate trust records of daily transactions in securities it has executed on behalf of the Plan, but instead relies on the individual participant's records maintained by Nationwide as plan recordkeeper. In effect, there is a single record keeping system, rather than a dual system—one maintained by the recordkeeper reflecting assets allocated to each participant's account, and one maintained by the plan trustee reflecting all financial transactions at a plan level—that would be periodically compared to ensure that the reporting systems reconcile and that the assets held in the trust are accurately reflected in the allocations to participant accounts. As a result, Nationwide Trust Co. has failed to perform its trust function with respect to plan assets.

**ERISA**

53.     29 U.S.C. §1104(a)(1) requires that a plan fiduciary "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the

exclusive purpose of … (ii) defraying reasonable expenses of administering the plan" exercising "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims."

54.     29 U.S.C. §1106(a)(1)(C) of ERISA prohibits a fiduciary of an employee benefit plan from entering into an agreement with a party in interest for the provision of services to the Plan. Under 29 U.S.C §1002(14)(B) a "party in interest" is defined to include "a person providing services to such plan." Nationwide is a "party in interest" because it is providing recordkeeping and other services to the AW Plan and other similarly situated plans.

55.     29 U.S.C. §1108(b)(2) exempts "Contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan" from the 29 U.S.C. §1106(a)(1)(C) bar "if no more than reasonable compensation is paid therefor."

56.     As alleged above, the addition of the "net asset fee" ensures that Defendants will receive a variable fee for recordkeeping that equals 1.00% of the total assets held in the Plan, regardless of the number of participants or any other factor that actually affects the cost of providing recordkeeping services. Thus, the Nationwide asset-based fee is not "reasonable compensation" under 29 U.S.C. §1108(b)(2), and so is not exempt from the prohibition of 29 U.S.C. §1106(a)(1)(C).

57.     Nationwide holds itself out as an expert on retirement plans, offering fiduciary education and other services. When it offered asset-based recordkeeping services, Nationwide knew or should have known that such charges were unreasonable and violated 29 U.S.C. §1108(b)(2), and 29 U.S.C. §1106(a)(1)(C). Nonetheless, Nationwide continued to charge

plans asset based fees for recordkeeping services.

58.     Andrus Wagstaff, as fiduciary to the AW Plan and its participants, failed to adequately perform its fiduciary obligation to ensure that the AW Plan pay no more than reasonable compensation for recordkeeping services, thereby causing the AW Plan to engage in a transaction prohibited by 29 U.S.C. § 1106(a)(1)((C). However, Andrus Wagstaff was not the recipient of the excessive compensation.

59.     29 U.S.C. §1132(a)(3) authorizes a plan participant to bring a civil action for "appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." In *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 245 (2000), the U.S. Supreme Court made it clear that 29 U.S.C. § 1106(a)(3) authorizes a civil action by a plan participant against a non-fiduciary who participates in a transaction prohibited by 29 U.S.C. § 1106.

## CLASS ACTION ALLEGATIONS

60.     29 U.S.C. §1132(a)(3) authorizes any participant or beneficiary of the Plans to bring an action individually on behalf of the Plans "(B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

61.     Acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the AW Plan and all similarly situated Plans enrolled in the Nationwide Retirement Flexible Advantage Retirement Plans Program, as an alternative to direct individual actions on behalf of the Plans under 29 U.S.C. §1132(a)(3), Plaintiff seeks to certify this action as a class action under Fed. R. Civ. P. 23 on behalf of the AW Plan and the Plans. Plaintiff seeks to certify, and to be appointed as representative of, the

following class:

> The AW Plan and every other participant-directed individual account plan enrolled in the Nationwide Retirement Flexible Advantage Retirement Plans Program for which Defendants provides recordkeeping and other administrative services for an asset-based fee by charging the Plans and participant accounts an amount calculated as a percentage of the value of the participant's account invested in any particular investment fund, at any time from the earlier of (i) October 1, 2014; or (ii), in the event the Court determines that Defendants have concealed the facts and circumstances that would have apprised Plaintiff and the Class of the existence of Defendants' excessive compensation, the first date on which Defendants provided sufficient disclosure of their compensation for recordkeeping and administrative services, through the date of judgment (the "Class Period").

62. This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

a. Per the Nationwide website, the Class includes up to 37,000 Plans and 2,400,000 retirement plan participants as members who are enrolled in the enrolled in the Nationwide Retirement Flexible Advantage Retirement Plans Program and is so large that joinder of all its members is impracticable.

b. There are questions of law and fact common to the Class because the Defendants charged excessive fees to the Plans in violation of 29 U.S.C. §1108(b)(2) and took the actions and omissions alleged herein as to the Plans and the individual participants. Thus, common questions of law and fact include the following, without limitation: whether an asset-based fee calculated as a percentage of a plan's assets constitutes reasonable compensation for recordkeeping services); whether the fiduciaries of the Plans breached their fiduciary duties to the Plans and caused the Plans to engage in prohibited transactions by failing to ensure that the Plans paid no more than reasonable compensation for recordkeeping services; whether the Plans suffered damages or losses from Defendants' excessive fees; and what Plan-wide equitable and other relief the Court

should impose in light of Defendants' wrongful conduct.

c. Plaintiff's claims are typical of the claims of the Class because Plaintiff was a participant during the time period at issue in this action and all participants in the Plans were harmed by Defendants' misconduct.

d. Plaintiff will fairly and adequately protect the interests of the class because she is an adequate representative of the Class because she was a participant in the AW Plan, which is typical of the Plans enrolled in the Nationwide Retirement Flexible Advantage Retirement Plans Program during the Class period, has no interests that are in conflict with the Class, is committed to the vigorous representation of the Class and has engaged experienced and competent attorneys to represent the Class.

e. Prosecution of separate actions for these violations of ERISA by individual Plan participants and beneficiaries would create the risk of (A) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants in respect to the discharge of its duties to the Plans and liability to the Plans under 29 U.S.C. §§1108(b)(2) and §1106(a)(1)(C); and (B) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plans would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

63. A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and impracticable for

individual members to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiff is aware of no difficulties likely to be encountered in the management of this matter as a class action. Alternatively, then, this action may be certified as a class under Rule 23(b)(3) if it is not certified under Rule 23(b)(1)(A) or (B).

64.     Plaintiff's counsel will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Class under Rule 23(g).

## FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

### Prohibited Transaction - Excessive and Unreasonable Compensation for Services in Violation of 29 U.S.C §1108(b)(2)

65.     Plaintiff incorporates the allegations set forth above as if fully stated herein.

66.     29 U.S.C. § 1106(a)(1)(C), generally prohibits the direct or indirect furnishing of services between a plan and a party-in-interest.

67.     29 U.S.C. § 1002(14) defines a party-in-interest as, among other things, as a person providing services to a plan. As a result of providing recordkeeping, and other administrative services to the AW Plan and the Plans, Defendants are parties-in-interest to the Plans.

68.     29 U.S.C. § 1108(b)(2) exempts from the prohibitions of 29 U.S.C. § 1106(a)(1)(C) "contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, *if no more than reasonable compensation is paid therefor*" (emphasis added).

69.     Defendants charged the AW Plan and other class members a fee based on a percentage of the value of the assets in the various plans. Since recordkeeping represents a fixed service at a fixed cost, that is contingent on the number of plan participants and not the amount of assets in the plan, there is no basis for charging an asset-based fee for that service, especially a fee that is more than double the average fee charged by investment funds for managing the actual investment of plan assets.

70.     An asset-based fee for recordkeeping also disproportionately impacts the individual participants in the plan, effectively penalizing those participants who have higher asset balances by charging them higher fees for the same services rendered to plan participants with lower asset balances.

71.     A reasonable fixed fee for recordkeeping would be between $35 and $64 per plan participant. By charging an asset based fee which resulted in fees approaching $500 per plan member, Defendants received  excessive and unreasonable compensation their services for which for which no exemption is available under 29 U.S.C. § 1108(b)(2).

72.     By charging excessive and unreasonable compensation for the recordkeeping services Defendants have caused the AW Plan and the Plans to engage in prohibited transactions in violation of 29 USC § 1106(a).

73.     Plaintiff and other similarly situated plan members have been harmed by the excessive fees paid to Defendants. The Supreme Court has recognized that "[e]xpenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan." *Tibble*, 135 S. Ct. at 1825. The U.S. Department of Labor has noted that a 1% higher level of fees (the amount charged by Defendants in this instance) over a 35-year period makes a 28% difference in retirement assets at the end of a

participant's career. U.S. Dep't of Labor, A Look at 401(k) Plan Fees, at 1–2 (Aug. 2013).

74.     Plaintiff has standing to assert this claim under 29 U.S. Code § 1132(a)(3) and

*Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 245 (2000).

75.     Defendants have been unjustly enriched as a result of charging and receiving

excessive fees to the Plan participants in violation of 29 U.S.C. §§1108(b)(2) and

§1106(a)(1)(C).

76.     Defendants are liable to the AW Plan and other similar Plans enrolled in the

Nationwide Retirement Flexible Advantage Retirement Plans Program for disgorgement of the

excessive compensation it received.

## PRAYER FOR RELIEF

Plaintiff, on behalf of the AW Plan and all similarly situated Plans, respectfully requests

that the Court:

• Certify the Class, appoint Plaintiff as a class representative, and appoint Franklin D.

Azar & Associates P.C. as Class Counsel;

• Find and declare that Defendants have charged excessive and unreasonable fee for

recordkeeping services as described above;

• Order Defendants to disgorge and make good to the Plans all losses to the Plans

resulting from the excessive fees charged, and to otherwise restore the Plans to the

position they would have occupied but for the violations of 29 U.S.C. §1108(b)(2) and 29

USC § 1106(a)(1)(C) by Defendants;

• Determine the method by which the Plans' losses should be calculated;

• Order Defendants to provide all accountings necessary to determine the amounts

Defendants must make good to the Plans;

• Surcharge against Defendants and in favor of the Plans all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;

• Award to the Plaintiff and the Class their attorney's fees, expert witness fees and costs under 29 U.S.C. §1132(g)(1) and the common fund doctrine;

• Order the payment of pre- and post- judgment interest; and

• Grant other equitable or remedial relief as the Court deems appropriate.

Respectfully submitted,

**DYER, GAROFALO, MANN & SCHULTZ**

/s/John A. Smalley_____
John A. Smalley, Esq.  (0029540)
Attorney for Plaintiff
131 N. Ludlow Street
Suite 1400
Dayton, Ohio  45402
 (937) 223-8888
Fax # (937) 226-9436
jsmalley@dgmslaw.com

Frank Azar, Esq.
Paul R. Wood, Esq.
Franklin D. Azar & Assocs.
14426 East Evans Ave
Aurora, CO 80014
(303)-757-3300
Fax # (303)-757-3206
woodp@fdazar.com

## JURY DEMAND

Now comes the Plaintiff, by and through counsel, and hereby demands a trial by jury on all issues of this matter.

/s/John A. Smalley_____
John A. Smalley (0029540)
Attorney for Plaintiff