**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

| | |
|---|---|
| ALANA SCHMITT, et al. | |
| Plaintiff, | **Judge Algenon L. Marbley** |
| vs. | **Magistrate Judge Chelsey M. Vascura** |
| NATIONWIDE LIFE INSURANCE COMPANY, et al. | **Civil Action No. 2:17-cv-00558** |
| Defendants. | **Oral Argument Requested** |

## DEFENDANTS NATIONWIDE LIFE INSURANCE COMPANY'S, NATIONWIDE BANK'S, AND NATIONWIDE TRUST COMPANY'S MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants Nationwide Life Insurance Company, Nationwide Bank, and Nationwide Trust Company (collectively "Nationwide") hereby move to dismiss Plaintiff's First Amended Complaint, ECF No. 8, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim, and under Rule 12(b)(7) of the Federal Rules of Civil Procedure, for failure to join a necessary party. As explained in the attached memorandum, Plaintiff seeks to hold Nationwide liable as a non-fiduciary for its participation in a transaction allegedly prohibited under ERISA—contracting with an ERISA fiduciary to provide services to an ERISA plan. But Plaintiff fails to adequately allege, as required, that Nationwide knew or should have known that its retention was in any way unlawful, and seeks relief not available from a non-fiduciary. Further, the fiduciary is a necessary party that Plaintiff has failed to join. For these reasons, explained in greater detail in the attached memorandum, the Court should dismiss Plaintiff's First Amended Complaint with prejudice.

Respectfully submitted,

/s/ Steven D. Forry
Steven D. Forry (0075520)
*Trial Attorney*
Ice Miller LLP
250 West Street
Columbus, Ohio 43215
Tel: (614) 462-2254
Fax: (614) 222-3435
Email: Steven.Forry@icemiller.com
*Counsel for Defendants Nationwide Life*
*Insurance Company, Nationwide Bank, and*
*Nationwide Trust Company, FSB*

**<u>Co-Counsel</u>**

Brian D. Boyle (D.C. #419773), admitted pro hac vice
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Tel: (202) 383-5327
Fax: (202) 383-5414
Email: bboyle@omm.com

Shannon M. Barrett (D.C. #476866), admitted pro hac vice
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Tel: (202) 383-5308
Fax: (202) 383-5414
Email: sbarrett@omm.com

Meaghan VerGow (D.C. #977165), admitted pro hac vice
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Tel: (202) 383-5504
Fax: (202) 383-5414
Email: mvergow@omm.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

ALANA SCHMITT, et al.

              Plaintiff,

vs.

NATIONWIDE LIFE INSURANCE
COMPANY, et al.

              Defendants.

**Judge Algenon L. Marbley**

**Magistrate Judge Chelsey M. Vascura**

**Civil Action No. 2:17-cv-00558**

**<u>Oral Argument Requested</u>**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS NATIONWIDE LIFE
INSURANCE COMPANY'S, NATIONWIDE BANK'S, AND NATIONWIDE TRUST
COMPANY'S MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................... 1

BACKGROUND ................................................................................................ 3

STANDARD OF REVIEW ............................................................................... 5

ARGUMENT ..................................................................................................... 6

I. PLAINTIFF HAS FAILED TO ALLEGE THAT NATIONWIDE
VIOLATED ANY ERISA PROVISION IN AGREEING TO PROVIDE
SERVICES TO THE PLAN ......................................................................6

Plaintiff has not and cannot allege that Nationwide violated any provision of ERISA. Only a fiduciary can violate ERISA § 406(a)(1)(C), which Plaintiff has not alleged Nationwide to be. *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238 (2000). And Nationwide could not have "violated" ERISA § 408(b)(2) because that section merely provides an exemption to the requirements of other ERISA provisions. Plaintiff's only possible claim is that Nationwide participated as a non-fiduciary in a breach by Andrus Wagstaff, the Plan's sponsor and fiduciary.

II. PLAINTIFF HAS FAILED TO ADEQUATELY ALLEGE THAT
NATIONWIDE KNEW OR SHOULD HAVE KNOWN THAT THE
PLAN'S DECISION TO RETAIN IT WAS UNLAWFUL ..........................................8

To state a claim against Nationwide for non-fiduciary liability, Plaintiff must allege that Nationwide knew or should have known that the challenged transaction was unlawful. *Harris Trust*, 530 U.S. at 245. In particular, Plaintiff must allege facts sufficient to show that Nationwide knew or should have known that the Plan's transaction with Nationwide fell within the categories of transactions covered by ERISA § 406 and was not subject to one or more of the prohibited transaction exemptions set forth in § 408. *Hans v. Tharaldson*, 2011 WL 7179644 (D.N.D. Oct. 31, 2011); *Keach v. U.S. Trust Co.*, 244 F. Supp. 2d 968 (C.D. Ill. 2003). But Plaintiff has failed to allege any facts negating the applicability of the exemption provided under ERISA § 408(b)(2) or supporting an inference that Nationwide knew or should have known that an exemption did not apply.

A. Plaintiff Has Not Adequately Alleged that Nationwide's Fees Were
Excessive or That Nationwide Knew or Should Have Believed That
Those Fees Were Not Reasonable Compensation Under a Reasonable
Arrangement ......................................................................................10

Plaintiff challenges the reasonableness of Nationwide's "Net Asset Fee" based on a survey reporting the median recordkeeping fees for 113 unidentified plans. But courts acknowledge (and the survey itself reports) that larger plans are able to claim efficiencies that result in lower fees, *Tibble v. Edison Int'l*, 135 S. Ct. 1823

(2015), and the plans surveyed were many times larger than the Andrus Wagstaff Plan.  The Amended Complaint, in contrasts, recognizes that thousands of plans alleged to be similarly-situated to the Plan have retained Nationwide's services on materially similar terms, supporting the reasonableness of Nationwide's fees.

**B.   Plaintiff Does Not Adequately Allege that Nationwide "Hid" Its Compensation or Failed to Make Disclosures Necessary for Andrus Wagstaff to Claim an Exemption Under ERISA § 408(b)(2)**...........................13

Plaintiff attempts to negate the applicability of § 408(b)(2)'s exemption by speculating that because the Plan's Forms 5500-SFs, which the Andrus Wagstaff firm prepared, did not disclose Nationwide's compensation, Nationwide must not have disclosed that compensation to Andrus Wagstaff.  But the contract between Nationwide and the Andrus Wagstaff Plan is explicit that Nationwide would not provide the information necessary for the Form 5500, and Nationwide was under no independent legal obligation to provide such information.  Plaintiff's speculation that Nationwide "hid" its compensation is, in any event, contradicted by Nationwide's contract with the Plan, which disclosed Nationwide's rates in detail.

**C.   Plaintiff's Remaining Allegations Do Not Even Remotely Suggest That the § 408(b)(2) Exemption Was Unavailable to Andrus Wagstaff**.................15

Plaintiff's other attacks on Nationwide do not negate the applicability of the § 408(b)(2) exemption either.

- Plaintiff's allegation that Nationwide did not perform trustee responsibilities does not undermine the reasonableness of the challenged fees because Nationwide did not contractually agree to provide trustee services in return for those fees.

- Plaintiff's criticism of the compensation Nationwide entities receive for operating the Destination funds (which Nationwide offers as possible plan investment options) does nothing to undercut the reasonableness of the disclosed rates that Nationwide separately charged for its administrative services.  Moreover, Plaintiff lacks standing to challenge the expense structures of the Destination funds because she does not allege that she ever invested in any Destination fund.  *Fuller v. SunTrust Banks, Inc.*, 2012 WL 1432306 (N.D. Ga. Mar. 20, 2012); *In re Meridian Funds Grp. Sec. & ERISA Litig.*, 917 F. Supp. 2d 231 (S.D.N.Y. 2013); *David v. Alphin*, 817 F. Supp. 2d 764 (W.D.N.C. 2011).

- Plaintiff's assertion that Nationwide reported falsely inflated expense ratios for certain funds and pocketed the difference between those and the funds' actual expense ratios is flawed for multiple reasons.  In her effort to generate supposed discrepancies, Plaintiff erroneously compares the expenses of different funds, and compares gross and net expense ratios, among other

errors.  And her speculation that Nationwide pocketed any supposed difference ignores more plausible explanations.

- Plaintiff's suggestion that Nationwide's asset-based fee structure makes its fees unreasonable has been rejected by other courts, *see, e.g., White v. Chevron Corp.*, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016); *Loomis v. Exelon Corp.*, 2009 WL 4667092 (N.D. Ill. Dec. 9, 2009), and is countered by the very survey on which Plaintiff relies.

**III.  THE LEGAL RELIEF PLAINTIFF SEEKS IS NOT AVAILABLE AGAINST A NON-FIDUCIARY** ...................................................................................19

Plaintiff's claim must also be dismissed for seeking relief that is unavailable from a non-fiduciary such as Nationwide.  ERISA § 502(a)(3) only authorizes a court to grant an injunction or "other appropriate equitable relief" against a non-fiduciary.  *McDannold v. Star Bank, N.A.*, 261 F.3d 478 (6th Cir. 2001).  Plaintiff seeks to recover an amount of money—equivalent to the amount by which Nationwide's compensation was allegedly "excessive"—from Nationwide's general assets, which is a quintessentially legal remedy. *See, e.g., Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002); *Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651 (2016); *Wood v. Prudential Ret. Ins. and Annuity Co.*, 2016 WL 5940946 (D. Conn. Sept. 19, 2016).  Although Plaintiff attempts to avoid that conclusion by purporting to seek the equitable remedies of an accounting and surcharge, those remedies are only available against fiduciaries.  *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011); *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1 (1st Cir. 1999); *Reich v. Cont'l Cas. Co.,* 33 F.3d 754, 756 (7th Cir. 1994); *Parke v. First Reliance Std. Life Ins. Co.*, 368 F.3d 999 (8th Cir. 2004); *Lance v. Ford Motor Co.*, 2009 WL 1133456 (E.D. Mich. Apr. 27, 2009); *Ellis v. Rycenga Homes, Inc.*, 2007 WL 1032367 (W.D. Mich. Apr. 2, 2007).

**IV.  THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO JOIN A NECESSARY PARTY** ...............................21

Plaintiff's claim should also be dismissed under Rule 12(b)(7) of the Federal Rules of Civil Procedure for failure to join Andrus Wagstaff, the fiduciary that Plaintiff alleges violated ERISA by retaining Nationwide, as a necessary party.  Plaintiff cannot obtain any relief against Nationwide without obtaining a judicial determination that Andrus Wagstaff violated ERISA's prohibited transaction provisions.  Andrus Wagstaff has obvious interests in defending itself against such a judicial holding.  *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968); *Iron Workers Local Union No. 17 Ins. Fund & Its Trs. v. Philip Morris Inc.*, 182 F.R.D. 512 (N.D. Ohio 1998).  The Court, moreover, cannot afford complete relief without Andrus Wagstaff because the Court can only effectuate the remedies of accounting and surcharge against a fiduciary, and Andrus Wagstaff and its consultant have the information necessary to those remedies.  *McCann v. Pierson*, 78 F.R.D. 347 (1978).  Proceeding without Andrus Wagstaff would unavoidably and unfairly prejudice it and prevent the Court from meaningfully awarding the relief that Plaintiff purports to seek while dismissing the action would not prevent Plaintiff from pursuing an adequate remedy through a future

action in which Andrus Wagstaff is included. *Sch. Dist. of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253 (6th Cir. 2009); *Clinton v. Babbitt*, 180 F.3d 1081 (9th Cir. 1999).

**REQUEST FOR ORAL ARGUMENT** ............................................................... 25

**CONCLUSION** ............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. GreatBanc Trust Co.*,
    835 F.3d 670 (7th Cir. 2016) ...................................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................5, 18

*In re Cardinal Health ERISA Litig.*,
    424 F. Supp. 2d 1002 (S.D. Ohio 2006) ................................................................5

*CIGNA Corp. v. Amara*,
    563 U.S. 421 (2011)..............................................................................................20

*Clinton v. Babbitt*,
    180 F.3d 1081 (9th Cir. 1999) .............................................................................23

*David v. Alphin*,
    817 F. Supp. 2d 764 (W.D.N.C. 2011) ................................................................16

*Dupree v. Prudential Ins. Co. of Am.*,
    2007 WL 2263892 (S.D. Fla. Aug. 7, 2007), *as amended* (Aug. 10, 2007)............13

*Ellis v. Rycenga Homes, Inc.*,
    2007 WL 1032367 (W.D. Mich. Apr. 2, 2007) ....................................................20

*Fuller v. SunTrust Banks, Inc.*,
    2012 WL 1432306 (N.D. Ga. Mar. 20, 2012).......................................................16

*Gardner v. Quicken Loans, Inc.*,
    567 F. App'x 362 (6th Cir. 2014) ..........................................................................5

*Gavitt v. Born*,
    835 F.3d 623 (6th Cir. 2016) ............................................................................5, 18

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002)..............................................................................................19

*Hans v. Tharaldson*,
    2011 WL 7179644 (D.N.D. Oct. 31, 2011) ...........................................................9

*Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*,
    530 U.S. 238 (2000)............................................................................................7, 8

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Haviland v. Metro. Life Ins. Co.*,
876 F. Supp. 2d 946 (E.D. Mich. 2012)................................................................20

*Hawkins v. Czarnecki*,
142 F.3d 434, 1998 WL 57333 (6th Cir. Feb, 2 1998) ........................................22

*In re Honda of Am. Mfg., Inc. ERISA Fees Litig.*,
661 F. Supp. 2d 861 (S.D. Ohio 2009) ................................................................13

*In re Huntington Bancshares Inc. ERISA Litig.*,
620 F. Supp. 2d 842 (S.D. Ohio 2009) ..................................................................5

*Iron Workers Local Union No. 17 Ins. Fund & Its Trs. v. Philip Morris Inc.*,
182 F.R.D. 512 (N.D. Ohio 1998) ........................................................................23

*Keach v. U.S. Trust Co.*,
244 F. Supp. 2d 968 (C.D. Ill. 2003) ................................................................8, 9

*Keweenaw Bay Indian Cmty. v. Michigan*,
11 F.3d 1341 (6th Cir. 1993) ................................................................................6

*Lance v. Ford Motor Co.*,
2009 WL 1133456 ................................................................................................20

*Leber v. Citigroup, Inc.*,
2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) ........................................................9

*Loomis v. Exelon Corp.*,
2009 WL 4667092 (N.D. Ill. Dec. 9, 2009) ........................................................18

*In re Mailman Steam Carpet Cleaning Corp.*,
196 F.3d 1 (1st Cir. 1999)....................................................................................20

*McCann v. Pierson*,
78 F.R.D. 347 (E.D. Pa. 1978)............................................................................24

*McDannold v. Star Bank, N.A.*,
261 F.3d 478 (6th Cir. 2001) ..............................................................................19

*Mehling v. N.Y. Life Ins. Co.*,
163 F. Supp. 2d 502 (E.D. Pa. 2001) ....................................................................9

*In re Meridian Funds Grp. Sec. & ERISA Litig.*,
917 F. Supp. 2d 231 (S.D.N.Y. 2013)..................................................................16

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*,
    136 S. Ct. 651 (2016) ....................................................................................................20

*Nixon v. Wilmington Trust Co.*,
    543 F.3d 354 (6th Cir. 2008) ..........................................................................................6

*Parke v. First Reliance Std. Life Ins. Co.*,
    368 F.3d 999 (8th Cir. 2004) .........................................................................................20

*Pegram v. Herdich*,
    530 U.S. 211 (2000) .........................................................................................................7

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
    390 U.S. 102 (1968) ..................................................................................................21, 22

*Reich v. Cont'l Cas. Co.*,
    33 F.3d 754 (7th Cir. 1994) ...........................................................................................20

*Sanchez v. Bos. Sci. Corp.*,
    38 F. Supp. 3d 727 (S.D. W.Va. 2014) .........................................................................23

*Sch. Dist. of Pontiac v. Sec'y of U.S. Dep't of Educ.*,
    584 F.3d 253 (6th Cir. 2009) .........................................................................................23

*Schmelzer v. Huntington Bancshares Fin. Corp.*,
    2017 WL 2807469 (S.D. Ohio June 29, 2017) ...............................................................6

*Sengpiel v. B.F. Goodrich Co.*,
    156 F.3d 660 (6th Cir. 1998) ...........................................................................................7

*SFS Check, LLC v. First Bank of Del.*,
    774 F.3d 351 (6th Cir. 2014) ...........................................................................................5

*Takeda v. Nw. Nat'l Life Ins. Co.*,
    765 F.2d 815 (9th Cir. 1985) .........................................................................................22

*Taylor v. United Techs. Corp.*,
    2009 WL 535779 (D. Conn. Mar. 3, 2009) ...................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .........................................................................................................5

*Tibble v. Edison Int'l*,
    135 S. Ct. 1823 (2015) ..................................................................................................11

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Trans Rail Am., Inc. v. Hubbard Twp.*,
   478 F. App'x 986 (6th Cir. 2012) .........................................................................5

*Tussey v. ABB, Inc.*,
   2012 WL 1113291 (W.D. Mo., March 31, 2012) .................................................11

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*,
   579 F.3d 220 (3d Cir. 2009).................................................................................20

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
   2016 WL 4507117 (C.D. Cal. Aug. 5, 2016).........................................................20

*Van Billiard v. Farrell Distrib. Corp.*,
   2009 WL 4729965 (D. Vt. Dec. 3, 2009) ...............................................................6

*Van Vels v. Betten*,
   2007 U.S. Dist. LEXIS 7003 (W.D. Mich. Jan. 31, 2007) ...................................13

*White v. Chevron Corp.*,
   2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ......................................................18

*Wood v. Prudential Ret. Ins. and Annuity Co.*,
   2016 WL 5940946 (D. Conn. Sept. 19, 2016).......................................................20

*Wsol v. Fiduciary Mgmt. Assocs., Inc.*,
   266 F.3d 654 (7th Cir. 2001) ...............................................................................12

**Statutes**

29 U.S.C. § 1002(21)(A), ERISA § 3(21)(A)................................................................7

29 U.S.C. § 1106(a), ERISA § 406(a) ...............................................................6, 7, 9

29 U.S.C. § 1108(b)(2), ERISA § 408(b)(2)......................................................... *passim*

29 U.S.C. § 1132(a)(3), ERISA § 502(a)(3) ........................................................ *passim*

29 U.S.C. § 1132(e)(2)................................................................................................25

**Other Authorities**

Black's Law Dictionary 1441 (6th ed. 1990)..............................................................20

**Rules**

Fed. R. Civ. P. 12(b) ........................................................................................2, 5, 21

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

Fed. R. Civ. P. 19(a) ............................................................................................ *passim*

Fed. R. Civ. P. 19(b) ...............................................................................6, 21, 24, 25

Fed. R. Civ. P. 19(c) .................................................................................................24

**Regulations**

26 C.F.R. § 1.162–7(b)(3)........................................................................................11

29 C.F.R. § 2520.103-5(c)(2)(iv)............................................................................14

29 C.F.R. § 2550.408b-2.....................................................................................11, 13

29 C.F.R. § 2550.408c-2.........................................................................................11

## PRELIMINARY STATEMENT

Plaintiff's core contention in this case is that the sponsor and named fiduciary of the Andrus Wagstaff, PC 401(k) Profit Sharing Plan (the "AW Plan" or "Plan")—and the fiduciaries of thousands of other 401(k) plans—violated their fiduciary obligations under the Employee Retirement Income Security Act of 1974 ("ERISA") by causing their plans to retain Nationwide[1] to provide plan administrative services at its disclosed rates. Strangely, however, Plaintiff does not propose to bring claims against any of those fiduciaries. Instead, Plaintiff seeks to deprive Nationwide of compensation for its services that it negotiated with thousands of plan fiduciaries at arms'-length, and to have Nationwide, alone, answer for the fiduciaries' supposed breaches.

Plaintiff does not allege that Nationwide acts as a fiduciary when negotiating its own fees with third-party fiduciaries, or that Nationwide has violated any ERISA provision. Plaintiff likewise cannot contend that Nationwide failed to disclose the challenged fees to the Plan's fiduciaries before it was retained—the fees were specified in Nationwide's service agreement with the Plan. Nonetheless, Plaintiff contends that Nationwide must return compensation that independent fiduciaries expressly approved and to which Nationwide is contractually entitled.

Plaintiff's effort to deny Nationwide the compensation it was promised for the services it performed fails on multiple, independent grounds. To hold Nationwide liable for the Plan fiduciary's decision to retain Nationwide, Plaintiff must adequately allege that Nationwide knew or should have known that this action violated ERISA. The Amended Complaint does nothing of the sort. Plaintiff's principal assertion is that independent fiduciaries' retention of Nationwide was improper because Nationwide's fees are too high. But Plaintiff rests that assertion on an apples-to-oranges comparison to the fees allegedly paid for an unknown bundle of services by a

---

[1] Unless otherwise specified, "Nationwide," as used herein, refers collectively to the Defendants: Nationwide Life Insurance Company, Nationwide Bank, and Nationwide Trust Company.

small set of unidentified, dissimilar plans with far greater buying power than the Plan.  In addition, Plaintiff acknowledges that a far larger set of plans in the market that are "similarly-situated" to the AW Plan—the Amended Complaint suggests thousands—have each contracted with Nationwide for materially similar services on materially similar terms to those obtained by the Plan.  Courts routinely look to the market to determine whether compensation for plan services is reasonable, and Plaintiff offers no reason why Nationwide should have concluded that thousands of fiduciaries in the 401(k) market acted unreasonably in agreeing to retain Nationwide's services over the services offered by Nationwide's many competitors.  And while Plaintiff offers ancillary criticisms of Nationwide, those criticisms are not only immaterial but are almost uniformly contradicted by the very materials on which Plaintiff purports to rely.

Yet, even if Plaintiff had adequately alleged that Nationwide knew or should have known that thousands of plan fiduciaries were breaching their ERISA fiduciary duties by purchasing Nationwide services (she has not), her effort to hold Nationwide liable for the fiduciaries' supposed breaches would still fail because Plaintiff does not seek any relief that ERISA allows against a non-fiduciary.  ERISA's civil enforcement scheme is principally designed to regulate the *fiduciaries* who act on a plan's behalf.  There is but a single cause of action that ERISA provides against *non-fiduciaries*—ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)—and that right of action provides only for "appropriate, *equitable* relief."  Despite invoking equitable terms, Plaintiff does not seek any genuinely equitable relief but seeks monetary damages, the quintessential *legal* remedy.  Any claim for such legal relief must be directed against an allegedly breaching fiduciary and not a non-fiduciary such as Nationwide.

Finally, Plaintiff's Amended Complaint should be dismissed under Rule 12(b)(7) of the Federal Rules of Civil Procedure because she has failed to join the Plan fiduciary, Andrus

Wagstaff, as a necessary party.  As a matter of law, this Court cannot enter judgment against Nationwide as a non-fiduciary without first holding that the Plan's fiduciary violated ERISA's fiduciary provisions.  And any judgment against Nationwide would necessarily affect the Plan fiduciary's existing services contract with Nationwide and ability to retain necessary plan services from anyone else.  This case, in short, has a direct, unavoidable bearing on the Plan fiduciary's legal, reputational and professional interests, and Plaintiff cannot keep it on the sidelines in a case in which the lawfulness of its conduct is the central issue.

Accordingly, for these reasons and for the reasons set forth in greater detail below, Plaintiff's claims against Nationwide should be dismissed with prejudice.

## BACKGROUND

Plaintiff Alana Schmitt is a participant in the AW Plan, a defined contribution plan sponsored by Andrus Wagstaff, PC for the benefit of its employees.  First Amended Complaint, ECF No. 8 ("FAC") at 2, ¶¶ 15, 17; Declaration of Shannon Barrett in Support of Nationwide's Motion to Dismiss the Amended Complaint ("Barrett Decl."), Ex. 1, at 1 ("2015 Form 5500-SF").  Andrus Wagstaff is the Plan administrator and a named fiduciary.  *Id.*; FAC ¶ 46.  It appointed an outside firm, Darnall Sikes Gardes & Frederick ("Darnall Sikes"), to act as the Plan's "Authorized Representative" and, among other things, to interact with Plan service providers.  Declaration of Kevin G. O'Brien in Support of Nationwide's Motion to Dismiss the Amended Complaint ("O'Brien Decl."), Ex. A ("Program Agmt."), at 1, 57-58.[2]

To meet the needs of participants, plans require various administrative services, such as recordkeeping.  FAC ¶ 22.  The Plan contracted with Nationwide Trust Company, FSB, a

---

[2] At the time Andrus Wagstaff and Nationwide entered into the Program Agreement in 2012, the name of the firm was Andrus, Hood and Wagstaff, PC and the name of the Plan was Andrus, Hood and Wagstaff, PC 401(k) Profit Sharing Plan.  The name of the firm, and thus the plan, changed to the current iterations sometime in 2013.

division of Nationwide Bank, to serve as the Plan custodian, and Nationwide Life Insurance

Company provided the Plan administrative services, including recordkeeping.  *Id.* ¶¶ 2, 19, 21,

34, 48.  The contract, or "Program Agreement," specifies the fees that Nationwide is entitled to

collect for its services, as well as amounts promised to Darnall Sikes for its Plan-related work.

In particular, the contract entitled Nationwide to collect an Asset Fee expressed as a percentage

of the amount invested in each of the Plan's investment options.  Program Agmt. at 3, 14-43.

For most options, the Program Agreement specified a "Net Asset Fee" of 1.45% of the Plan

assets invested (or 145 basis points) in that option.  *Id.* at 14-43.  This consisted of Nationwide's

own compensation, a base fee equal to 0.95% of the Plan's invested assets (or 95 basis points).

*Id.*  It also consisted of a 50 basis point amount, that Nationwide was instructed to pay on the

Plan's behalf to Darnall Sikes for its investment services to the Plan.  *Id.* at 14-43, 83.  And the

Program Agreement authorized Nationwide to collect an "Administrative Fee" of 5 basis points,

and to remit that fee to Darnall Sikes for administrative services that Darnall Sikes provided the

Plan.  *Id.* at 69.  As the Plan's invested assets grew,[3] Nationwide agreed to reduce the amount it

charges for its administrative services from 95 to 45 basis points.  O'Brien Decl., Ex. C

("404(a)(5) Disclosure") at 11-12.[4]  Additionally, in some instances, individual investment

options made payments to Nationwide based on the Plan participants' investment in those

options.  *Id.* at 44.  In such instances, Nationwide, through a feature known as "ClearCredit,"

reduced its base fee even further, and thus the Net Asset Fee, by the rate of those payments.  *Id.*

---

[3] *Compare*, *e.g.*, Barrett Decl. Ex. 2, at 1-2 (2012 Plan Form 5500-SF, reflecting seven participants and $42,771 in assets as of year-end) *with* 2015 Plan Form 5500-SF (27 participants and $999,442 in assets as of year-end).

[4] Unlike the Program Agreement and participant quarterly statements, the 404(a)(5) Disclosure made available by Nationwide to the Plan's administrator reports the Administrative Fee as part of the Net Asset Fee.  *Compare* 404(a)(5) Disclosure at 11-13 (disclosing Net Asset Fee of 1.00% for most options and stating, "AMC/Net Asset Fee may include an administrative fee which is charged by the third party administrator.") *with* O'Brien Decl. Ex. D ("Pl.'s Q4 2016 Statement") at 3 (stating that reported fund performance "reflects the underlying fund expenses and the deduction of Nationwide's standard asset fee of 0.95% for the mutual funds listed above in the Net Asset Fee column and an asset based plan administration fee of 0.05%.").

at 14-44.  The amount of ClearCredit in the AW Plan ranges from 0 to 25 basis points, depending on the investment options selected by Plan participants.  *Id.*  As a result, the actual asset fee that Nationwide charges participants in the AW Plan for its administrative services can range from 20 to 45 basis points, depending on the participants' individual investment choices.

## STANDARD OF REVIEW

To avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Trans Rail Am., Inc. v. Hubbard Twp.*, 478 F. App'x 986, 988 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "[A] legal conclusion couched as a factual allegation" need not be accepted as true.  *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  And pleadings that merely "recit[e] the elements of a cause of action" or offer "naked assertions devoid of further factual enhancement" will not do.  *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 355 (6th Cir. 2014) (quotations omitted).  Rather, a complaint must include sufficient facts to allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Gavitt*, 835 F.3d at 640 (quotations omitted).

In ruling on a motion to dismiss, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).[5]  Allowable documents include those not formally incorporated into the complaint if the "document is referred to in the complaint and is central to the plaintiff's claim."  *Gardner v. Quicken Loans, Inc.,* 567 F. App'x 362, 365 (6th

---

[5] *See also In re Huntington Bancshares Inc. ERISA Litig.*, 620 F. Supp. 2d 842, 846 n.3 (S.D. Ohio 2009) (considering "ERISA plan documents not attached to a complaint" on motion to dismiss); *In re Cardinal Health ERISA Litig.*, 424 F. Supp. 2d 1002, 1016, 1035 n.32 (S.D. Ohio 2006) (considering plan documents and trust and service agreements in appendix to motion to dismiss, when documents were incorporated in complaint by reference).

Cir. 2014) (citation omitted).  Judicially noticeable documents include a plan's public filings

with a regulatory entity, such as the Department of Labor.  *See Van Billiard v. Farrell Distrib.*

*Corp.*, 2009 WL 4729965, at *3 (D. Vt. Dec. 3, 2009) (considering Form 5500s filed with

Department of Labor).  If a document the court may consider on a motion to dismiss contradicts

allegations in the complaint, the court need not accept those allegations as true.[6]

The Sixth Circuit has instructed that "resolution of … [a motion for] dismissal for

failure to join an indispensable party under Rule 12(b)(7), involves a three step process."

*Keweenaw Bay Indian Cmty. v. Michigan*, 11 F.3d 1341, 1345 (6th Cir. 1993).  First, the

Court must determine whether a party is "necessary" to the action under Rule 19(a).  *Id.*

Second, if the party is necessary under Rule 19(a), the Court must determine if it is feasible

to bring the party before the Court without raising jurisdictional or venue problems.  *Id.* at

1345-46.  Third, if it is not feasible to join the party, the Court must look to Rule 19(b) to

determine if, in equity and good conscience, the action should proceed among the existing

parties, or should be dismissed.  *Id.* at 1346.  "The rule is not to be applied in a rigid manner

but should instead be governed by the practicalities of the individual case."  *Id.*

## ARGUMENT

## I.     PLAINTIFF HAS FAILED TO ALLEGE THAT NATIONWIDE VIOLATED ANY ERISA PROVISION IN AGREEING TO PROVIDE SERVICES TO THE PLAN

Plaintiff's sole theory is that Nationwide's service relationship with the Plan "violated"

ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), and ERISA § 408(b)(2), 29 U.S.C. §

1108(b)(2).  But Plaintiff has not alleged, and cannot allege, that ***Nationwide*** violated either

---

[6] *See Nixon v. Wilmington Trust Co.*, 543 F.3d 354 (6th Cir. 2008) (affirming dismissal of all claims, including, *inter alia*, a breach of contract claim, made against a trustee, where sections of the Trust that plaintiff had not attached to her complaint demonstrated that she was not a beneficiary); *Schmelzer v. Huntington Bancshares Fin. Corp.*, 2017 WL 2807469, at *3 (S.D. Ohio June 29, 2017) (dismissing claim where allegations contradicted language of the Plan and other incorporated documents).

provision.  ERISA § 406(a)(1)(C) imposes duties solely on fiduciaries, and only a fiduciary can violate that provision.  29 U.S.C. § 1106(a)(1) ("A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect— … (C) furnishing of goods, services, or facilities between the plan and a party in interest[.]"); *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 245 (2000) ("§ 406(a) imposes a duty only on the fiduciary that causes the plan to engage in the transaction.").  The Amended Complaint does not even label Nationwide a fiduciary, much less allege facts that establish that Nationwide acted as a fiduciary and was the fiduciary responsible for causing the Plan to contract with Nationwide.[7]  To the contrary, Plaintiff points to Andrus Wagstaff as the fiduciary responsible for retaining Nationwide.  FAC ¶¶ 9, 58.  Plaintiff thus has not plausibly alleged that Nationwide violated ERISA § 406(a)(1)(C).

Plaintiff's suggestion, in turn, that Nationwide, or anyone else, "violated" ERISA § 408(b)(2) simply makes no sense.  Section 408(b)(2) does not impose any obligation on anyone.  Instead, as Plaintiff acknowledges, it simply exempts fiduciaries from liability for so-called "prohibited transactions" when they "[c]ontract[] or mak[e] reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid

---

[7] Under ERISA § 3(21)(A), a person is a fiduciary of a plan:  "*[T]o the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A) (emphasis added).  This "to the extent" language places a critical limitation on fiduciary status:  "In every case charging breach of ERISA fiduciary duty, … the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."  *Pegram v. Herdich*, 530 U.S. 211, 226 (2000); *see also Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660, 665 (6th Cir. 1998).  Here, even if Nationwide had some fiduciary obligations with respect to the services it provides the Plan, Plaintiff does not suggest that Nationwide is a fiduciary with respect to its compensation, or with respect to the decision of the Plan to contract with Nationwide.

therefor." 29 U.S.C. § 1108(b)(2); FAC ¶ 55.  The § 408(b)(2) exemption may spare a fiduciary from liability when it has caused a plan to enter into a transaction that ERISA prohibits, but, again, Nationwide is not alleged to have acted as a fiduciary in contracting with the Plan.

Plaintiff's only possible claim, then, is that Nationwide participated as a ***non-fiduciary*** in someone else's fiduciary breach.  But, while ERISA authorizes some claims against non-fiduciaries for participating in a fiduciary's violation of ERISA's prohibited transaction provisions, it does so only under limited circumstances.  As discussed below, Plaintiff has failed to plead such circumstances here for two distinct reasons:  First, Plaintiff has not adequately alleged that Nationwide had actual or constructive knowledge of circumstances rendering the Plan's engagement of Nationwide unlawful.  Second, she has not adequately alleged a right to equitable relief—the only relief that ERISA makes available against a non-fiduciary.

## II.    PLAINTIFF HAS FAILED TO ADEQUATELY ALLEGE THAT NATIONWIDE KNEW OR SHOULD HAVE KNOWN THAT THE PLAN'S DECISION TO RETAIN IT WAS UNLAWFUL

Plaintiff's claim should be dismissed because she has not adequately alleged that Nationwide, as a non-fiduciary, knew or should have known that the Plan's engagement of Nationwide was unlawful.  Plaintiff expressly ties her claim to *Harris Trust*'s recognition that ERISA § 502(a)(3) authorizes claims for equitable relief against a non-fiduciary who has received ill-gotten plan assets.  530 U.S. at 250; FAC ¶ 9.  But, in so holding, the Supreme Court made clear that, where the non-fiduciary received the assets "for value," the non-fiduciary "must be demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful."  530 U.S. at 251; *see also Keach v. U.S. Trust Co.*, 244 F. Supp. 2d 968, 974 (C.D. Ill. 2003) (holding that upon showing that non-fiduciary provided value, "a presumption of good faith attaches and remains until overcome by proof that the transferee acted with actual or constructive notice of a breach by the trustee or other fiduciaries to the plan").

8

While Plaintiff alleges that Nationwide was paid too much, the Amended Complaint itself recognizes that Nationwide provided value, in the form of services, for the compensation it received.  *See, e.g.*, FAC ¶¶ 18, 47, 54.  Indeed, by asserting a violation of ERISA § 406(a)(1)(C) (which applies only when a plan obtains "goods, services, or facilities" from a party-in-interest), Plaintiff necessarily acknowledges that Nationwide provided consideration as part of the transaction.  29 U.S.C. § 1106(a)(1)(C).  Thus, to pursue any claim against Nationwide, Plaintiff must allege not only that the Plan's transaction with Nationwide as a party-in-interest was technically prohibited by ERISA §406, but also facts establishing that the transaction was not exempt from liability under one or more of the many prohibited transaction exemptions set forth in ERISA § 408—and, further, that Nationwide knew or should have known of the absence of any exemption.  *See Hans v. Tharaldson*, 2011 WL 7179644, at \*16 (D.N.D. Oct. 31, 2011) (explaining that under *Harris Trust*, a plaintiff seeking to hold a non-fiduciary liable for participation in a prohibited transaction must establish "that the nonfiduciaries have actual or constructive knowledge that the fiduciary engaged in a prohibited transaction under § 406(a) that was not exempted under § 408(e)."); *Keach*, 244 F. Supp. 2d at 976 ("[T]here can be no liability of non-fiduciary parties-in-interest absent the existence of a prohibited transaction under § 406(a) which does not qualify for exemption under § 408(e)").[8]

---

[8] Some courts have held, in cases against fiduciaries, that once a plaintiff alleges the existence of a transaction with a party in interest, the burden shifts to the fiduciary to prove that an exemption applies.  *See, e.g., Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 676 (7th Cir. 2016); *but see Leber v. Citigroup, Inc.*, 2010 WL 935442, at \*11 (S.D.N.Y. Mar. 16, 2010) (finding that plaintiffs failed to state a claim where they did not allege that "defendants' conduct f[ell] beyond the reach of the statutory exemption—and thus might plausibly be actionable under section 406"); *Mehling v. N.Y. Life Ins. Co.*, 163 F. Supp. 2d 502, 510 (E.D. Pa. 2001) (dismissing complaint because plaintiffs failed to "allege that the fees paid by the Plans are not in compliance with the requirements of" a regulatory exemption).  However, the elements of a claim against fiduciaries who allegedly violate their duties under ERISA § 406(a) are materially different than those for a claim against a non-fiduciary.  Plaintiffs suing the fiduciary responsible for causing a plan to enter into a transaction need not prove that the fiduciary knew or should have known the transaction was unlawful; they merely need to prove that the fiduciary knew or should have known the transaction was with a party in interest.  *See* 29 U.S.C. § 1106(a).  In any event, even if this Court were to subject Nationwide as a non-fiduciary to the same burden-shifting that some courts have imposed on plan

Plaintiff has failed to meet this requirement. The Amended Complaint alleges no facts sufficient to negate the availability to Andrus Wagstaff of an exemption under ERISA § 408(b)(2) for transactions involving the acquisition of services for "reasonable compensation," much less to support an inference that Nationwide knew or should have known that the exemption did not apply. Indeed, Plaintiff's own allegations, and materials on which the Amended Complaint expressly relies, indicate the contrary—that the Plan fiduciaries enjoyed the protections of the §408(b)(2) exemption in deciding to engage Nationwide.

A. **Plaintiff Has Not Adequately Alleged that Nationwide's Fees Were Excessive or That Nationwide Knew or Should Have Believed That Those Fees Were Not Reasonable Compensation Under a Reasonable Arrangement**

Plaintiff's principal basis for challenging the application of ERISA § 408(b)(2) is her contention that Nationwide's fees are excessive and thus not reasonable compensation under a reasonable arrangement. *See* FAC ¶ 71. Plaintiff bases that contention on a comparison of Nationwide's "Net Asset Fee" to the median recordkeeping cost of $64 per-participant reported in a 2015 survey of 113 unidentified plans by the consulting firm NEPC. *See id.* ¶ 4; Barrett Decl., Ex. 3 ("NEPC Survey"). Plaintiff alleges, based on that survey, that the Plan's per-participant fees should have been equal to or less than that median rate. *See* FAC ¶ 71.[9]

This survey provides no basis for condemning the reasonableness of Nationwide's compensation. As the regulations surrounding ERISA § 408(b)(2) make clear, it is "just to assume that reasonable and true compensation is only such amount as would ordinarily be paid

---

fiduciaries, the dismissal record supports the conclusion that the § 408(b)(2) exemption applied for the reasons discussed below.

[9] Plaintiff also suggests that Nationwide's fees are excessive because they are higher than the expense ratios of some of the Plan's investment options. But the two fees cover different bundles of services—one fee covers the services necessary to operate an investment fund and the other fee covers the administrative services necessary to operate a plan. Plaintiff offers no basis to conclude that the relative cost of one is at all indicative of the reasonableness of the other.

for **like services by like enterprises under like circumstances.**" 26 C.F.R. § 1.162–7(b)(3). (emphasis added).[10] On its face, however, the survey does not report the recordkeeping costs of plans "under like circumstances" to the AW Plan. Even assuming *arguendo* that the surveyed plans received the same scope and quality of services as the Plan, the survey—which the Amended Complaint incorporates, FAC ¶ 4, n. 2—reports that the median number of participants in those plans was in the thousands (two orders of magnitude larger than the Plan, with its 22 participants), and the median asset value was in the hundreds of millions of dollars (again, two orders of magnitude larger than the Plan's $1.1 million). FAC ¶ 1; NEPC Survey, at Ex. 2. In fact, approximately one quarter of the surveyed plans held over a billion dollars in assets— making them roughly **three** orders of magnitude larger than the Plan. *See* NEPC Survey at 3; FAC ¶ 1. It is common sense (and judicially acknowledged) that larger plans are often able to claim efficiencies that result in lower fees.[11] Indeed, the survey itself explains that "[t]he general rule is that the more participants in a plan, the lower the recordkeeping fees per head." NEPC Survey at 4. It is thus completely unremarkable that the surveyed plans were able to obtain lower per-participant fees and not in any way indicative, to the Court or to Nationwide, that Nationwide's fees for the AW Plan were excessive.[12]

---

[10] *See* 29 C.F.R. § 2550.408b-2(d)("Section 2550.408c-2 of these regulations contains provisions relating to what constitutes reasonable compensation for the provision of services."); 29 C.F.R. § 2550.408c-2 ("[A]ny compensation which would be considered excessive under 26 CFR 1.162–7 … will not be 'reasonable compensation.'").

[11] *See Tibble v. Edison Int'l,* 135 S. Ct. 1823, 1825 (2015) (acknowledging, in an "excessive fee" case, that larger plans may take advantage of lower rates where small-scale investors cannot); *Tussey v. ABB, Inc.*, 2012 WL 1113291, at * 12 (W.D. Mo., March 31, 2012) (noting that "administration and recordkeeping fees are generally lower for larger plans"), *rev'd in part on other grounds*, 746 F.3d 327 (8th Cir. 2014).

[12] Notably, Plaintiff's counsel here rely on the same NEPC Survey to assert in another case that roughly 47,000 plans serviced by one of Nationwide's competitor, Voya Financial, also pay excessive fees for recordkeeping services. Barrett Decl., Ex. 10, Complaint, *Goetz v. Voya Fin., Inc.*, No. 1:17-cv-01289-GMS (D. Del. Sept. 9, 2017), ECF No. 1, ¶¶ 38, 18, 61. Thus, to conclude that Plaintiff has plausibly alleged, based on the NEPC Survey, that the Plan has paid excessive fees, the Court would need to infer unreasonably that the 113 unknown plans referenced in that survey are more indicative of market rates than not only the thousands of plans that use Nationwide, but also the 47,000 plans that allegedly retain Voya's services.

This is particularly so given that the Amended Complaint itself points to another, far more expansive set of market comparators that are, by Plaintiff's own assertions, highly similar enterprises facing materially the same circumstances—namely, all of the plans that Plaintiff purports to include in her putative class.  Although the Amended Complaint indicates that the plans varied somewhat in size and that their arrangements with Nationwide generated somewhat different per-participant fees (FAC ¶ 41), Plaintiff cannot contend that those variations are at all material:  she has alleged that the plans and their arrangements with Nationwide are similarly-situated enough that the reasonableness of Nationwide's compensation from those plans can be decided as a common issue.  FAC ¶ 62.[13]  Plaintiff, moreover, offers no basis to conclude that any of those plans' dealings with Nationwide (much less any sizable portion of them) were anything other than arms'-length transactions.[14]  In short, Plaintiff has offered no reason why Nationwide could not have relied on the willingness of a broad sector of the market to obtain its services at its disclosed fees to conclude that its rates were fully competitive and thus reasonable.  Indeed, if, as the Amended Complaint endorses, reasonable rates can be determined from a survey of just 113 dissimilar and unidentified plans, then the decisions by the fiduciaries of "up to 37,000 Plans," *id.* ¶ 62, to agree to Nationwide's rates and terms is more than sufficient to support an inference that those rates and terms *are* reasonable.[15]

---

[13] To be clear, Nationwide does not concede that Plaintiff can establish commonality or that class treatment would be appropriate in this case.  Plaintiff, however, has alleged that the plans are similarly-situated, and it is appropriate to hold Plaintiff to the necessary import of her allegations in assessing the sufficiency of her claims.

[14] Plaintiff does try to discount the decisions of the fiduciaries of thousands of small plans both within and outside the putative class by alleging that these fiduciaries "lack the expertise to navigate the labyrinth of federal regulations governing employee benefit plans or the time and resources to seek out and employ financial and legal consultants to understand the complexities of the marketplace."  FAC ¶ 1.  This broad-based effort to invalidate the decision-making of small plan fiduciaries in general is not only absurd on its face but is refuted by the Program Agreement, which reflects that the Plan fiduciary (itself a law firm) retained an outside company that specializes in these matters to represent the Plan in its dealings with Nationwide.  Program Agmt. at 1, 57-58.

[15] Courts routinely evaluate reasonableness of compensation under ERISA using a market pricing test.  *See, e.g.*, *Wsol v. Fiduciary Mgmt. Assocs., Inc.*, 266 F.3d 654, 657 (7th Cir. 2001) (fiduciary did not breach fiduciary duties in retaining broker where amount paid was "as good as what it could have bought in a market free of kickbacks and

**B.**  **Plaintiff Does Not Adequately Allege that Nationwide "Hid" Its Compensation or Failed to Make Disclosures Necessary for Andrus Wagstaff to Claim an Exemption Under ERISA § 408(b)(2)**

In addition to her flawed comparison to the rates achieved by far larger plans, Plaintiff attempts to negate the application of ERISA § 408(b)(2) by suggesting that Nationwide tried to "hide" its compensation from the Plan's fiduciary by failing to disclose that compensation in its § 408(b)(2) disclosures.[16] FAC ¶ 49-50; 29 CFR 2550.408b-2.  Plaintiff does not, however, direct her attack at the content of the § 408(b)(2) disclosures themselves but instead on the contents of the Plan's Forms 5500-SFs—regulatory filings that, as Plaintiff acknowledges, "Andrus Wagstaff as the AW Plan administrator is responsible for preparing and filing."  FAC ¶¶ 46, 50.  Plaintiff speculates that, because Andrus Wagstaff did not report Nationwide's compensation in the Plan's Forms 5500-SFs, Nationwide must not have disclosed that compensation to Andrus Wagstaff.  *Id.* ¶ 50.  Such speculation is not only insufficient (even if credited) to sustain a claim against Nationwide, it also is wholly unfounded.

Plaintiff premises her speculation on the assertions that Nationwide was "contractually obligated to prepare and file the Plan's Annual Return" and was "obligated by 29 CFR 2520.103-1 to provide information to the Plan Administrator in order to file the Form 55[00]-SF."  FAC ¶ 46.  But Nationwide's contract with the Plan directly contradicts the former contention.  *See*

---

undue influence"); *In re Honda of Am. Mfg., Inc. ERISA Fees Litig.,* 661 F. Supp. 2d 861, 867, (S.D. Ohio 2009) (explaining, in dismissing claim that plan paid excessive fees by investing in retail funds, that "the retail funds were offered to investors in the general public, setting the expense ratios against the backdrop of market competition"); *Taylor v. United Techs. Corp.*, 2009 WL 535779, at *11 (D. Conn. Mar. 3, 2009) ("Further, the Court agrees with defendant that plaintiffs have failed to proffer evidence evincing that Fidelity's receipt of its negotiated base fee and sub-transfer agent fees was materially unreasonable and beyond the market rate."); *Dupree v. Prudential Ins. Co. of Am.*, 2007 WL 2263892, at *40 (S.D. Fla. Aug. 7, 2007), *as amended* (Aug. 10, 2007) ("[T]he relevant standard for measuring adequate consideration under ERISA § 408(b)(5) is whether the consideration is reasonable as compared to charges paid by arm's-length parties, *i.e.*, the 'fair market value.'"); *Van Vels v. Betten*, 2007 U.S. Dist. LEXIS 7003, at *18-19 (W.D. Mich. Jan. 31, 2007) (holding that amounts paid by plan for brokerage services were not unreasonable where the "only evidence of record shows that [defendant] was offered and paid market rates for investment services.").

[16] ERISA regulations require that the Plan fiduciary obtain certain disclosures, including fee disclosures, from Nationwide in order for the § 408(b)(2) exemption to apply.  *See* 29 CFR § 2550.408b-2(c)(1).

*generally* Program Agmt. Nothing in that agreement obligates Nationwide to prepare or file the Plan's Form 5500-SF. To the contrary, it reflects that Andrus Wagstaff elected the "No Custodial Reporting" option, which specifies that Nationwide is "under no obligation to prepare any reports" and if a report is requested it "***will not include information necessary for completion of the Form 5500***." *Id.* at 4 (emphasis added).

As to Plaintiff's contention that Nationwide was obligated to provide information "by 29 CFR 2520.103-1," nothing in that regulation imposes such a requirement. Plaintiff presumably intended to refer instead to 29 CFR § 2520.103-5, which does impose an obligation on insurance companies, banks and trust companies in certain circumstances to provide information to a plan's administrator to allow the administrator to complete the plan's Form 5500. But Plaintiff does not allege any facts supporting her conclusory assertion that Nationwide had such a legal obligation here. For example, the regulation requires that a bank or trust company holding a plan's assets in a custodial account provide certain information "upon request of the plan administrator." 29 CFR § 2520.103-5(c)(2)(iv). But Plaintiff does not allege that Andrus Wagstaff ever requested such information in preparing the Plan's Forms 5500-SF. To the contrary, Nationwide's contract established a common understanding that it would not. Program Agmt. at 4.[17]

In any event, Plaintiff's contention that Nationwide tried to "hide" its compensation or failed to provide necessary § 408(b)(2) disclosures is countered by the Program Agreement. The Program Agreement, in addition to describing Nationwide's services to the Plan, sets forth in detail Nationwide's Asset Fee, including how it would affect the costs associated with each Plan

---

[17] Plaintiff's effort to attribute the contents of the Plan's Forms 5500-SF to some deception by Nationwide is further undermined by the Forms 5500 of the other Nationwide client plans identified in the Amended Complaint—which **disclose** Nationwide's compensation. *See, e.g.*, FAC ¶ 41 (referencing EXAL Corporation 401(k) Plan, Claas of America, Inc. Employees' Savings Plan, JMAC, Inc. 401(k) Plan, and Rocky Brands, Inc. 401(k) Plan); *see also* Barrett Decl., Exs. 4-7 (excerpts of 2015 Forms 5500 for identified plans).

investment option.[18]  Program Agmt. at 3, 14-43.  Moreover, in executing the Program

Agreement, representatives of Andrus Wagstaff acknowledged that it and the Plan had received

"all required disclosures as required by Employee Retirement Income Security Act of 1974, as

amended, including regulations thereunder, 408(b)(2), if applicable."  *Id.* at 2.

### C.   Plaintiff's Remaining Allegations Do Not Even Remotely Suggest That the § 408(b)(2) Exemption Was Unavailable to Andrus Wagstaff

In addition to the criticisms addressed above, Plaintiff launches a series of ancillary

attacks on Nationwide and its service arrangements.  None of those challenges, however, give

reason for Nationwide, or the Court, to doubt the application of the § 408(b)(2) exemption.

For example, Plaintiff alleges that Nationwide Trust "serves as trustee for many of the

plans on the platform" but does not properly carry out its trustee responsibilities.  FAC ¶ 51-52.

The Program Agreement, however, did not require Nationwide to act as trustee or to perform any

of the trust services that Nationwide allegedly failed to perform.  *See generally* Program Agmt.

Even assuming that Nationwide Trust took on the role of trustee, it cannot be said to have

received unreasonable compensation by performing or not performing services that Nationwide

never contractually agreed to provide for its Asset Fee.  Plaintiff has not alleged that Nationwide

received ***any*** other compensation to provide trust services, and thus has not adequately alleged

that Nationwide received ***unreasonable*** fees for trust services.  And Plaintiff does not otherwise

point to any harm allegedly stemming from Nationwide Trust's failure to provide trust services

in the manner Plaintiff believes they should have been provided.

---

[18]Adding to the absurdity of Plaintiff's contention that Nationwide tries to "hide" its compensation, Plaintiff acknowledges that Nationwide annually explains its fees to participants themselves.  FAC ¶ 2 ("Nationwide describes the fee in the annual AW Plan participant fee disclosure required by 29 CFR 2550.404a-5 as follows: 'AMC/Net Asset Fee - This is a fee charged by Nationwide to recover expenses that may include compensation paid to financial advisors, administrative service fee payments to Administrative Firm/Authorized Representative, and any expense credits issued to the plan.  Additionally, this fee pays for services provided by Nationwide including access to a variety of investment options, the recordkeeping platform, customer service, etc.'"); 404(a)(5) Disclosure at 11-13 (containing similar description of "AMC/Net Asset Fee" and disclosing fee amount).

Plaintiff also criticizes Nationwide for recieving asset-based fees for its provision of administrative services in addition to the compensation Nationwide entities receive for operating the Destination funds that Nationwide offers as possible plan investment options.  FAC ¶ 39. Yet Nationwide's receipt of compensation for operating those funds—whose expense ratios were fully disclosed to the Plan's fiduciaries, *see, e.g.*, Program Agmt. at 14-43, and whose costs Plaintiff does not allege were out of market range—do nothing to undercut the reasonableness of the disclosed rates that Nationwide separately charged for its administrative services.  And Plaintiff lacks Article III standing to challenge the expense structures of the Destination funds themselves because she does not allege that she ever invested her account in any of those funds and thus cannot claim to have been harmed by their fee structure.  *See* FAC ¶ 14 (identifying funds in which Plaintiff's account is invested); *see also, e.g.*, *Fuller v. SunTrust Banks, Inc.*, 2012 WL 1432306 at *8 (N.D. Ga. Mar. 20, 2012) (dismissing prohibited transaction claim for lack of standing because plaintiff was not alleged to have invested in challenged fund); *In re Meridian Funds Grp. Sec. & ERISA Litig.*, 917 F. Supp. 2d 231, 234-35 (S.D.N.Y. 2013) (holding that plaintiff could not pursue claims at to funds in which it did not invest); *David v. Alphin*, 817 F. Supp. 2d 764, 781-82 (W.D.N.C. 2011) (holding that plaintiffs lacked standing to challenge plan's inclusion of fund option in which plaintiffs had not invested because plaintiffs did not show that they "personally ... suffered some actual or threatened injury as a result of the putatively illegal conduct" of the defendants.), *aff'd*, 704 F.3d 327 (4th Cir. 2013).

Plaintiff next contends that Nationwide reported falsely inflated expense ratios for certain funds and speculates that Nationwide must have pocketed the difference between what it reports as the funds' expense ratios and the expense ratios reported in the funds' prospectuses.  FAC ¶¶ 43-45.  The primary example that Plaintiff provides, however, exposes the fatal flaws in

Plaintiff's analysis.  First, Plaintiff mistakenly compares the expense ratios of two *entirely*

*different funds.*  Plaintiff alleges that her quarterly statement for the fourth quarter of 2016

reported an expense ratio of 1.15% for the Wells Fargo Small Cap Value Fund.  FAC ¶ 43.  But

that statement did not list the Wells Fargo Small *Cap* Value Fund at all.  It instead listed 1.15%

as the "Gross Expense Ratio" of the Wells Fargo Small *Company* Value Fund.  Pl.'s Q4 2016

Statement at 2.  Moreover, Plaintiff compounded her error by inexplicably comparing the "Gross

Expense Ratio" of the Small Company Value Fund (which the quarterly statement explained did

not take into account fee waivers), Pl.'s Q4 2016 Statement at 3, to the expense ratio "after

waivers" of the Small Cap Value Fund—an obvious apples-to-oranges comparison.  FAC ¶ 43.

The gross expense ratio reported in the quarterly statement for the Small *Company* Value Fund

fully comports with the gross expense ratio reported in the fund's 2016 prospectus.  Barrett Decl.

Ex. 8 at 9 (prospectus for Wells Fargo Small Company Value Fund).[19]  Yet, even ignoring these

and other errors in Plaintiff's analysis,[20] Plaintiff's effort to leap from the existence of modest

differences in the expense ratios reported in certain Nationwide disclosures and those reported in

fund prospectuses to the conclusion that Nationwide is illicitly pocketing the difference is pure

conjecture that ignores far more plausible explanations.  For example, Plaintiff ignores the far

more plausible explanation that Nationwide relied on more contemporaneous sources than fund

---

[19] Plaintiff alleges that the Plan's § 404(a)(5) participant disclosure lists an expense ratio of 1.00% for the Wells Fargo Small Cap Value Fund.  The 404(a)(5) Disclosure that Nationwide makes available to the Plan's administrator does not list that fund but has listed 1.00% as the "Net Expense Ratio" of the Wells Fargo Small Company Fund, which is consistent with the net expense ratio reported in the fund's prospectus.  Barrett Decl. Ex. 8 at 9 (fund prospectus); 404(a)(5) Disclosure at 12.

[20] Plaintiff's errors are by no means limited to the Wells Fargo Small Cap Company Fund.  For example, Plaintiff alleges that Nationwide disclosed an expense ratio of 0.50% for the American Funds Capital World Growth and Income Fund – Class R-6, when Plaintiff's quarterly statement in fact discloses an expense ratio of 0.45% for that fund (exactly what Plaintiff contends the prospectus reported).  FAC ¶ 44; Pl.'s Q4 2016 Statement at 2.

prospectuses in disclosing expense ratios.[21]  Such rank speculation cannot carry Plaintiff's

pleadings past the dismissal stage.  *See Gavitt*, 835 F.3d at 640 ("The factual allegations must

'raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555).

Finally, Plaintiff suggests that the mere asset-based nature of Nationwide's fees made

them unreasonable, alleging that "responsible recordkeepers" instead charge fees on a per

participant basis.  FAC ¶¶ 26, 69.  The use of asset-based fees to compensate recordkeepers,

however, is commonplace, as reflected in the very survey on which Plaintiff bases her claim of

excessive fees.  *See* NEPC Survey at 2 ("[T]he recordkeeping fees for half of all retirement

investment accounts are still calculated using pricing models based on assets within the plan.").

And courts have recognized that there is nothing inherently improper with paying recordkeepers

through asset-based fees.  *See, e.g., White v. Chevron Corp.*, 2016 WL 4502808, at *14 (N.D.

Cal. Aug. 29, 2016) (dismissing claim that "fees necessarily exceeded a prudent amount purely

because they were asset-based and not based on the number of participants"); *Loomis v. Exelon

Corp.*, 2009 WL 4667092, at *2 (N.D. Ill. Dec. 9, 2009) (dismissing claim that fees were

excessive because the fees were asset-based), *aff'd*, 658 F.3d 667 (7th Cir. 2011).[22]

Plaintiff has, in short, alleged no facts sufficient to support an inference that

Nationwide's service relationship with the Plan was an unreasonable arrangement or otherwise

---

[21] For example, Plaintiff identifies a single basis point difference between the expense ratio Nationwide disclosed for the Delaware Diversified Income Fund, institutional class, and that disclosed in the fund's prospectus. FAC ¶ 44.  Plaintiff's quarterly statement, however, reported the same expense ratio as that reported in the fund's annual report.  Pl.'s Q4 2016 Statement at 3; Barrett Decl. Ex. 9 at 9 (Oct. 31, 2016 Annual Report).  As of year-end 2016, the latest prospectus for the fund had been issued in May 2016.  (https://web.archive.org/web/2017091814225 5/https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=C000010960&type=&dateb=20161231&co unt=40&scd=filings)

[22] In a possible additional effort to invite skepticism of Nationwide, Plaintiff also notes that Nationwide previously settled a class action relating to aspects of its compensation.  FAC ¶ 10.  In approving that settlement, the court entered an order binding plan participants to the settlement release.  Final Order and Consent Judgment, *Haddock v. Nationwide Life Insur. Co.*, No. 3:01-cv-01552 (D. Conn. April 9, 2015), ECF No. 601, ¶¶ 14-17.  Although Nationwide does not assert the release as a defense as part of this motion, it reserves the right to enforce the release at a later stage on an appropriate record if this litigation proceeds.

failed to meet the conditions of the § 408(b)(2) exemption. To the contrary, the only conclusion that can be reached from the dismissal record is that the exemption fully applied. Plaintiff has thus failed to allege sufficient facts to establish that Nationwide knew or should have known that the transaction was unlawful, and her Amended Complaint should therefore be dismissed.

## III. THE LEGAL RELIEF PLAINTIFF SEEKS IS NOT AVAILABLE AGAINST A NON-FIDUCIARY

Plaintiff's claim must also be dismissed for seeking relief that is unavailable from a non-fiduciary such as Nationwide. ERISA § 502(a)(3) only authorizes a court to grant injunctive or "other appropriate equitable relief" against a non-fiduciary. *McDannold v. Star Bank, N.A.*, 261 F.3d 478, 486 (6th Cir. 2001) ("[A]ny recovery against a non-fiduciary under § 502(a)(3) is confined to 'appropriate equitable relief.'"). Plaintiff's demands for "disgorgement," "surcharge," and "accountings" do not state a claim under § 502(a)(3) because the monetary relief she seeks is not equitable. The Supreme Court has recognized that, "[a]lmost invariably," suits "seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' [which]… are, of course, the classic form of legal relief." *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 210 (2002) (quotations and internal citations omitted).

Equity allows the recovery of money or property against a non-fiduciary "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213. But Plaintiff does not seek recovery of specifically identifiable funds in Nationwide's possession that are traceable to the Plan. She instead merely seeks to recover an amount of money—equivalent to the amount by which Nationwide's compensation was allegedly "excessive"—from Nationwide's general assets. FAC ¶¶ 76, Prayer for Relief. That is a ***legal*** remedy and is not available under ERISA

19

§ 502(a)(3).  *Wood v. Prudential Ret. Ins. and Annuity Co.*, 2016 WL 5940946, at *5 (D. Conn. Sept. 19, 2016) (dismissing claim for disgorgement by non-fiduciary of "undisclosed, excessive, and unreasonable compensation" on grounds that it was a request for "legal relief").[23]

Nor can Plaintiff convert her claim into one for equitable relief by invoking the terms of "surcharge," "accounting," and "disgorgement."  In *CIGNA Corp. v. Amara*, the Supreme Court indicated that "surcharge" could apply under ERISA § 502(a)(3) to provide a plaintiff "make-whole" relief against a ***breaching fiduciary*** for losses stemming from that fiduciary's breach. 563 U.S. 421, 442 (2011).  But, in doing so, the Court expressly pointed to the "critical difference" between fiduciary and non-fiduciary defendants, explaining that "[t]he surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary."  *Id*.  Thus, the clear implication of *Amara* is that surcharge is not available against non-fiduciaries.[24]  Similarly, as several courts have held, an accounting of profits is only an equitable remedy when asserted against a breaching fiduciary.[25]  Accordingly,

[23] *See also Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan,* 136 S. Ct. 651, 657 (2016) ("Equitable remedies are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing … rather than a right to recover a sum of money generally out of the defendant's assets.") (citation omitted); *In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 579 F.3d 220, 238 (3d Cir. 2009) ("Because the plaintiffs are unable to identify money or property … belonging in good conscience to them and clearly trace[able] to particular funds or property in the defendant's possession, they cannot recover profits from [defendant] as a form of equitable relief.") (internal citations omitted); Haviland v. Metro. Life Ins. Co.*, 876 F. Supp. 2d 946, 965 (E.D. Mich. 2012) (where plaintiffs sought disgorgement from "any funds"—not "identifiable" or "traceable" funds—relief was legal, not equitable), *aff'd on other grounds*, 730 F.3d 563 (6th Cir. 2013).
[24] *See In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 7 (1st Cir. 1999) ("[T]he word 'surcharge'" is an "'imposition of personal liability on a fiduciary for willful or negligent misconduct in the administration of his fiduciary duties.'" (quoting Black's Law Dictionary 1441 (6th ed. 1990)); *Ellis v. Rycenga Homes, Inc.*, 2007 WL 1032367, at *3 (W.D. Mich. Apr. 2, 2007) (quoting *Mailman*).
[25] *See Reich v. Cont'l Cas. Co.,* 33 F.3d 754, 756 (7th Cir. 1994), (explaining that a suit seeking an accounting "against a non-fiduciary would normally be a suit at law and the relief sought therefore legal."); *Parke v. First Reliance Std. Life Ins. Co.*, 368 F.3d 999, 1009 (8th Cir. 2004) (quoting *Reich* with approval); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2016 WL 4507117, at *8 (C.D. Cal. Aug. 5, 2016) (holding accounting of profits not applicable to ERISA claim against non-fiduciary); *Lance v. Ford Motor Co.*, 2009 WL 1133456, at *10-11 (E.D. Mich. Apr. 27, 2009 (citing *Reich* and holding "[s]ince [p]laintiffs cannot establish a breach of fiduciary duty, it follows that they cannot establish a right to an equitable accounting.").

because Plaintiff has not sufficiently alleged a right to any relief available against a non-fiduciary, Plaintiff's claim against Nationwide as a non-fiduciary should be dismissed.

## IV. THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO JOIN A NECESSARY PARTY

Plaintiff's claims should be dismissed under Rule 12(b)(7) because Plaintiff has failed to join a necessary party—Andrus Wagstaff, the fiduciary that Plaintiff alleges violated ERISA's prohibited transaction rules by retaining Nationwide at Nationwide's stated fees.

Rule 19(a)(1)(B) requires the joinder, if feasible, of any person who "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may … as a practical matter impair or impede the person's ability to protect the interest[.]" Fed. R. Civ. P. 19(a)(1)(B). The term "claims an interest" simply means "having an interest" in the subject action. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 107, 123-24 (1968). In addition, Rule 19(a)(1)(A) separately requires joinder of a party, if feasible, if "in that person's absence, the court cannot accord complete relief among existing parties[.]" Fed. R. Civ. P. 19(a)(1)(A). If joinder of a party who must otherwise be joined is not feasible, the Court must determine, "in equity and good conscience," whether the action should be dismissed. Fed. R. Civ. P. 19(b). In doing so, the Court must consider (1) the extent to which a judgment rendered in the absence of a party might prejudice the absent or existing parties; (2) whether that prejudice can be lessened by measures such as protective provisions in the judgment or the shaping of relief; (3) whether a judgment would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. *Id.*

The Plan fiduciary falls squarely within the categories of parties who must be joined if feasible under Rule 19(a) standards. Not only does it have a central interest in this case, the entire litigation rises or falls on whether it violated its fiduciary duties under ERISA. As

21

discussed above, Plaintiff cannot, as a matter of law, obtain any relief against Nationwide without obtaining a judicial determination that the Plan fiduciary violated ERISA's prohibited transaction provisions. *Supra* at 6-10. The fiduciary has an obvious interest in avoiding such a determination, and it cannot meaningfully protect that interest if it is absent from the litigation.

Plaintiff may attempt to argue that a judgment would not impair that interest because, as a non-party, the Plan fiduciary would not be bound by a holding against Nationwide. But, as the Supreme Court explained in *Provident Tradesmens,* Rule 19(a) does not limit necessary parties to those who may be bound by a court's judgment:

> Of course, since the outsider is not before the court, he cannot be bound by the judgment rendered. This means, however, only that a judgment is not *res judicata* as to, or legally enforceable against, a nonparty. It obviously does not mean either (a) that a court may never issue a judgment that, in practice, affects a nonparty or (b) that (to the contrary) a court may always proceed without considering the potential effect on nonparties simply because they are not "bound" in the technical sense. Instead, as Rule 19 (a) expresses it, the court must consider the extent to which the judgment may "as a practical matter impair or impede his ability to protect" his interest in the subject matter.

390 U.S. at 110-11 (internal citations omitted). Nor is it clear that the Plan fiduciary would not be bound by a judgment. *See, e.g., Hawkins v. Czarnecki*, 142 F.3d 434, 1998 WL 57333, at *3 (6th Cir. Feb, 2 1998) ("Collateral estoppel can be used to bind a **non-party** to the prior suit [] if the non-party was in privity with a party to the prior action.") (emphasis in original). The Court need not resolve that here, however, because the risk of legal preclusion alone is enough to make the Plan fiduciary a necessary party. *See, e.g.*, *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 819-21 (9th Cir. 1985) (explaining that in determining whether joinder is required under Rule 19, courts "need not conclusively determine how collateral estoppel would operate in future litigation," as "Rule 19 speaks to **possible** harm, not only to certain harm) (emphasis in original; internal quotations omitted). The Plan fiduciary's interest, moreover, is not limited to the risk of

22

liability. A judicial determination that the Plan fiduciary—a law firm whose very purpose is to represent clients in a fiduciary capacity[26]—violated fiduciary duties owed to its own employees could cause it significant professional and reputational harm. *See, e.g.*, *Iron Workers Local Union No. 17 Ins. Fund & Its Trs. v. Philip Morris Inc.*, 182 F.R.D. 512, 517-18 (N.D. Ohio 1998) ("A party's interest in an action need not be a legal interest, but rather need only be a claim to an interest that is sufficiently related to the subject of the action.") (quotations omitted).

A judgment against Nationwide would also impair the Plan fiduciary's obligation, as a fiduciary, to obtain necessary Plan services. A determination by this Court—in the Plan fiduciary's absence—that the Plan fiduciary was prohibited from retaining Nationwide at its negotiated fees would, as practical matter, invalidate the Plan fiduciary's existing agreement with Nationwide. *Sch. Dist. of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 303 (6th Cir. 2009) ("It is hornbook law that all parties to a contract are necessary in an action challenging its validity or interpretation."); *Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir. 1999) ("[A] district court cannot adjudicate an attack on the terms of a negotiated agreement without jurisdiction over the parties to that agreement."). And such a holding would severely constrain the Plan fiduciary's ability to contract for Plan services going forward. The Plan fiduciary would no longer be able to rely on the decision-making process that led it to select Nationwide in the first place—despite having had no meaningful opportunity to defend that process before this Court. Some service providers, moreover, could remove themselves from future consideration rather than accept the risk of contracting with a fiduciary whose previous contractual commitments had been deemed invalid and violative of ERISA.

---

[26] *See Sanchez v. Bos. Sci. Corp.,* 38 F. Supp. 3d 727 (S.D. W.Va. 2014) (identifying "Aimee H. Wagstaff, Andrus & Wagstaff, Lakewood, CO" as counsel of record); https://www.andruswagstaff.com/contact-us (identifying Andrus Wagstaff, PC as law firm headquartered in Lakewood, Colorado).

Finally, the Plan fiduciary is a necessary party under Rule 19(a)(1)(A) because "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). Plaintiff does not purport to seek money damages and cannot do so against Nationwide under § 502(a)(3). She instead purports to seek equitable remedies, including an "accounting" and "surcharge." As discussed above, those remedies can only be obtained against a fiduciary like the Plan fiduciary. *Supra* at 19-21. And, even if they were available against a non-fiduciary, no meaningful accounting or surcharge could occur without the Plan fiduciary's participation. Plaintiff purports to seek "all accountings necessary" to determine the extent to which Nationwide received excessive compensation and a surcharge of any excessive amounts identified through such accountings. FAC, Prayer for Relief. But to determine whether or to what extent the Plan fiduciary caused the plan to pay Nationwide excessive compensation, the Court would need to determine what compensation terms the Plan fiduciary could have obtained through a different service provider other than Nationwide. (Andrus Wagstaff cannot, after all, be said to have caused the plan to pay excessive compensation if it committed the Plan to obtain necessary services under the best available terms.) That information is uniquely in the hands of the Plan fiduciary and its consultant; only they know what other potential arrangements the Plan considered. *McCann v. Pierson*, 78 F.R.D. 347, 350 (E.D. Pa. 1978) (holding company to be necessary party to action seeking accounting of transactions where company handled and knew the details of those transactions). Plaintiff, in contrast, points to no records in Nationwide's possession that would enable the Court to assess the extent, if any, that Nationwide's compensation was "improper, excessive and/or in violation of ERISA." FAC, Prayer for Relief.

With respect to Rule 19(b), the Amended Complaint does not allege that Plaintiff could not have joined the Plan fiduciary in this suit. *See* Fed. R. Civ. P. 19(c) (requiring party asserting

claim for relief to allege the name, if known, of any person required to be joined if feasible but not named and the reasons for not joining that person).[27]  But to the extent they contend the Plan fiduciary could not have been joined, the factors identified in Rule 19(b) strongly favor dismissal here.  For the reasons discussed, litigation of the Plan fiduciary's conduct without the Plan fiduciary's participation in the lawsuit would unfairly prejudice it and prevent the Court from meaningfully awarding the relief that Plaintiff purports to seek.[28]  There is nothing, moreover, that the Court could do in shaping its judgment or the relief provided that would minimize that prejudice:  The Court cannot hold Nationwide liable without holding that the Plan fiduciary breached fiduciary duties, and thus exposing the fiduciary to the natural ramifications of such a holding.  Lastly, there is no basis to conclude that dismissing this action would deprive Plaintiff the ability to seek an adequate remedy through a future suit involving all necessary parties where the Plan is administered or where the breach allegedly occurred.  *See* 29 U.S.C. § 1132(e)(2).  The Amended Complaint should accordingly be dismissed for failure to join a necessary party.

**REQUEST FOR ORAL ARGUMENT**

Defendants submit that oral argument is warranted in light of the technical nature of Plaintiff's claims and the potential complexity of the issues involved.

**CONCLUSION**

For the reasons stated, the Amended Complaint should be dismissed with prejudice.

---

[27] Rule 19(a)(1) requires joinder of a necessary party "who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction." Fed. R. Civ. P. 19(a)(1).  Because Plaintiff is suing under a federal statute, the addition of the Plan fiduciary would not affect the court's subject matter jurisdiction.  ERISA, in turn, broadly provides that actions under its civil enforcement provisions "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found."  29 U.S.C. § 1132(e)(2).

[28] Proceeding in the Plan fiduciary's absence would also unfairly prejudice Nationwide by excluding from the litigation the party best situated to defend the fiduciary's conduct, which is again the central and necessary focus of Plaintiff's claim.  *See* Fed. R. Civ. P. 19(b)(1) (requiring courts to consider prejudice to existing parties).

Respectfully submitted,

/s/ Steven D. Forry
Steven D. Forry (0075520)
*Trial Attorney*
Ice Miller LLP
250 West Street
Columbus, Ohio 43215
Tel: (614) 462-2254
Fax: (614) 222-3435
Email: Steven.Forry@icemiller.com
*Counsel for Defendants Nationwide Life*
*Insurance Company, Nationwide Bank, and*
*Nationwide Trust Company, FSB*

**Co-Counsel**

Brian D. Boyle (D.C. #419773), admitted pro hac vice
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Tel:  (202) 383-5327
Fax: (202) 383-5414
Email:  bboyle@omm.com

Shannon M. Barrett  (D.C. #476866), admitted pro hac vice
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Tel:  (202) 383-5308
Fax: (202) 383-5414
Email:  sbarrett@omm.com

Meaghan VerGow  (D.C. #977165), admitted pro hac vice
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Tel: (202) 383-5504
Fax: (202) 383-5414
Email: mvergow@omm.com

26

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF filing system this 18th day of September, 2017.

/s/ Steven D. Forry
Steven D. Forry (0075520)
*Trial Attorney*
Ice Miller LLP
250 West Street
Columbus, Ohio 43215
Tel: (614) 462-2254
Fax: (614) 222-3435
Email: Steven.Forry@icemiller.com
*Counsel for Defendants Nationwide Life*
*Insurance Company, Nationwide Bank, and*
*Nationwide Trust Company, FSB*