**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | |
|---|---|
| THERESA BROWN, individually and as a representative of a class of participants and beneficiaries on behalf of the Andrus Wagstaff PC 401(k) Profit Sharing Plan and all other similarly situated individual account retirement plans,<br><br>        Plaintiff,<br><br>vs.<br><br>NATIONWIDE LIFE INSURANCE COMPANY, et al.<br><br>-and-<br><br>ANDRUS WAGSTAFF, PC, individually and on behalf of a class of others similarly situated,<br><br>        Defendants. | **Judge Algenon L. Marbley**<br><br>**Magistrate Judge Chelsey M. Vascura**<br><br>**Civil Action No. 2:17-cv-00558**<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT NATIONWIDE'S MOTION TO STRIKE THE CLASS ALLEGATIONS**
**FROM THE SECOND AMENDED COMPLAINT**

Defendants Nationwide Life Insurance Company, Nationwide Bank, and Nationwide

Trust Company (collectively "Nationwide") hereby move under Rule 23(d)(1)(D) of the Federal

Rules of Civil Procedure to strike the class allegations from Plaintiff's Second Amended

Complaint, ECF No. 19.  The Court should strike the defendant class allegations because (1)

Plaintiff does not have Article III standing to sue any putative defendant class member other than

Defendant Andrus Wagstaff, PC ("Andrus Wagstaff"); and (2) there is no "juridical relationship"

between the putative defendant class members, *Thompson v. Board of Education of the Romeo*

*Community Schools*, 709 F.2d 1200, 1205 (6th Cir. 1983).  The Court should similarly strike the

plaintiff class allegations because the fiduciaries of the plans included in the putative plaintiff

class are indispensable parties for the same reasons the Court has already found Andrus Wagstaff

to be indispensable, and Plaintiff has failed to join those fiduciaries as defendants in this action.

For these reasons, explained in greater detail in the attached memorandum, the Court should

strike, with prejudice, the class allegations from Plaintiff's Second Amended Complaint, and this

matter should proceed only on Plaintiff's claims.

Respectfully submitted,


/s/ Steven D. Forry
Steven D. Forry (0075520)
*Trial Attorney*
Ice Miller LLP
250 West Street
Columbus, Ohio 43215
Tel: (614) 462-2254
Fax: (614) 222-3435
Email: Steven.Forry@icemiller.com
*Counsel for Defendants Nationwide Life*
    *Insurance Company, Nationwide Bank, and*
    *Nationwide Trust Company, FSB*


**Co-Counsel**
Brian D. Boyle (D.C. #419773), admitted pro hac vice
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Tel:  (202) 383-5327
Fax: (202) 383-5414
Email:  bboyle@omm.com

Shannon M. Barrett  (D.C. #476866), admitted pro hac vice
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Tel:  (202) 383-5308
Fax: (202) 383-5414
Email:  sbarrett@omm.com

Meaghan VerGow  (D.C. #977165), admitted pro hac vice
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Tel: (202) 383-5504
Fax: (202) 383-5414
Email: mvergow@omm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

| | |
|---|---|
| THERESA BROWN, individually and as a representative of a class of participants and beneficiaries on behalf of the Andrus Wagstaff PC 401(k) Profit Sharing Plan and all other similarly situated individual account retirement plans,<br><br>        Plaintiff,<br><br>vs.<br><br>NATIONWIDE LIFE INSURANCE COMPANY, et al.<br><br>-and-<br><br>ANDRUS WAGSTAFF, PC, individually and on behalf of a class of others similarly situated,<br><br>        Defendants. | **Judge Algenon L. Marbley**<br><br>**Magistrate Judge Chelsey M. Vascura**<br><br>**Civil Action No. 2:17-cv-00558**<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NATIONWIDE'S
MOTION TO STRIKE THE CLASS ALLEGATIONS FROM THE SECOND AMENDED
COMPLAINT**

# TABLE OF CONTENTS

**Page(s)**

**PRELIMINARY STATEMENT** ............................................................................1

**PROCEDURAL HISTORY**.................................................................................3

**STANDARD OF REVIEW** ..................................................................................5

**ARGUMENT**.......................................................................................................6

I.     THE COURT SHOULD STRIKE THE DEFENDANT CLASS ALLEGATIONS BECAUSE PLAINTIFF LACKS ARTICLE III STANDING TO SUE SPONSORS OF PLANS IN WHICH SHE WAS NOT HERSELF A PARTICIPANT ...............................................................................................6

     A.     Plaintiff's Allegation That Plan Sponsors in the Putative Defendant Class Entered into Similar but Separate Contracts with Nationwide Does Not Establish a Juridical Relationship Among Those Sponsors ...................................6

     B.     No "Juridical Relationship" Can Be Established Here for the Separate Reason That the Contracts at Issue Vary in Terms That Are Critical to Plaintiff's Claim ...............................................10

II.    THE COURT SHOULD STRIKE THE PLAINTIFF CLASS ALLEGATIONS IN LIGHT OF PLAINTIFF'S FAILURE TO ADD AS DEFENDANTS THE FIDUCIARIES OF THE PUTATIVE PLAINTIFF CLASS PLANS.............................13

**REQUEST FOR ORAL ARGUMENT** ................................................................17

**CONCLUSION** ...................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barker v. FSC Sec. Corp.,*
    133 F.R.D. 548 (W.D. Ark. 1989) ........................................................................7

*Bearden v. Honeywell Int'l, Inc.,*
    2010 WL 1223936 (M.D. Tenn. Mar. 24, 2010) ...................................................5

*Boles v. Greeneville Hous. Auth.,*
    468 F.2d 476 (6th Cir. 1972) ..............................................................................16

*Clinton v. Babbitt,*
    180 F.3d 1081 (9th Cir. 1999) ............................................................................16

*Davidson Well Drilling, Ltd. v. Bristol-Meyers Squibb Co.,*
    2009 WL 2135396 (S.D.N.Y. July 16, 2009) .....................................................15

*Hans v. Tharaldson,*
    2011 WL 7179644 (D.N.D. Oct. 31, 2011) .........................................................14

*Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.,*
    530 U.S. 238 (2000) ...........................................................................................14

*Hawkins v. Czarnecki,*
    142 F.3d 434, 1998 WL 57333 (6th Cir. Feb, 2 1998) .......................................15

*Keach v. U.S. Tr. Co., N.A.,*
    244 F. Supp. 2d 968 (C.D. Ill. 2003)..................................................................14

*LaMar v. H & B Novelty & Loan Co.,*
    489 F.2d 461 (9th Cir. 1973) ................................................................................6

*Landmann v. Bann-Cor,*
    2004 WL 1944789 (S.D. Ill. July 16, 2004) .........................................................7

*Loreto v. Procter & Gamble Co.,*
    2013 WL 6055401 (S.D. Ohio Nov. 15, 2013)....................................................5

*Mull v. Alliance Mortg. Banking Corp.,*
    219 F. Supp. 2d 895 (E.D. Tenn. 2002) ....................................................7, 8, 10

*Pfeil v. State St. Bank & Tr. Co.,*
    806 F.3d 377 (6th Cir. 2015) ..............................................................................10

*Pilgrim v. Universal Health Card, LLC,*
    660 F.3d 943 (6th Cir.2011) .................................................................................5

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Rikos v. Procter & Gamble Co.*,
  2012 WL 641946 (S.D. Ohio Feb. 28, 2012) ............................................................5

*Sch. Dist. of Pontiac v. Sec'y of U.S. Dep't of Educ.*,
  584 F.3d 253 (6th Cir. 2009) ....................................................................................16

*Street v. PSB Lending Corp.*,
  2002 WL 1797773 (W.D. Tenn. July 31, 2002) ........................................................8

*Takeda v. Nw. Nat'l Life Ins. Co.*,
  765 F.2d 815 (9th Cir. 1985) ...................................................................................15

*Thillens, Inc. v. Community Currency Exchange Association of Illinois, Inc.*,
  97 F.R.D. 668 (N.D. Ill. 1983) ..................................................................................9

*Thompson v. Board of Education of the Romeo Community Schools*,
  709 F.2d 1200 (6th Cir. 1983) ........................................................................2, 6, 7, 9

*United States v. Trucking Employers, Inc.*,
  75 F.R.D. 682 (D.D.C. 1977) .....................................................................................8

**Rules**

Fed. R. Civ. P. 23(c)(1)(A) ...............................................................................................5

Fed. R. Civ. P. 23(d)(1)(D) ...............................................................................................5

**Regulations**

29 C.F.R. § 2550.408c-2(b)(1) .........................................................................................16

**Treatises**

McLaughlin on Class Actions § 3:4 (15th ed. 2018) ......................................................5

**Other Authorities**

DOL Information Letter to D. Ceresi, Feb. 19, 1998........................................................16

## PRELIMINARY STATEMENT

In its order regarding Nationwide's[1] motion to dismiss, ECF No. 46, the Court recognized a key flaw in Plaintiff's[2] then-operative complaint. Plaintiff's core theory is that the fiduciaries of the plans comprising the putative plaintiff class that were responsible for retaining Nationwide's recordkeeping services violated ERISA in making that decision, and that Nationwide received excess compensation as a result. Critically, however, Plaintiff failed to name any of those fiduciaries as defendants. Discussing Andrus Wagstaff PC ("Andrus Wagstaff" or "AW")—the alleged fiduciary of Plaintiff's plan—the Court explained that Plaintiff's claims could not be sustained without adding AW as a defendant because AW's "interests are not adequately represented by Nationwide [given that the] Court could theoretically determine … that [AW] breached its fiduciary duty to [Plaintiff] and similarly situated retirement plan beneficiaries, but that Nationwide cannot be held liable because it lacked requisite knowledge or intent." *Id.* at 8. Accordingly, the Court gave Plaintiff three weeks to file an amended complaint "joining all necessary parties." *Id.* at 9.

In response to the Court's Order, Plaintiff filed a Second Amended Complaint adding AW as an additional defendant. Plaintiff did not, however, join "all necessary parties" with respect to her claims on behalf of plans other than the AW plan.[3] Plaintiff apparently recognized that—under the same logic by which the Court determined AW to be a necessary party for

---

[1] As used herein, "Nationwide" refers to Defendants Nationwide Life Insurance Company, Nationwide Bank, and Nationwide Trust Company.

[2] The current named plaintiff, Theresa Brown, recently replaced the original named plaintiff, Alana Schmitt, as the only named plaintiff is this case. *See infra* at 4-5. For ease of reference, Nationwide uses the term "Plaintiff" herein to refer to Ms. Schmitt and Ms. Brown during their respective tenures as the sole named plaintiff.

[3] As used herein, the "AW plan" refers to the Andrus Wagstaff, PC 401(k) Profit Sharing Plan.

Plaintiff's claim as to the AW plan—this lawsuit cannot proceed as to plans other than the AW plan without giving the fiduciaries of those other plans the opportunity to defend themselves against Plaintiff's allegations. But, rather than actually joining those other fiduciaries in accordance with the Court's Order, Plaintiff has sought simply to include those fiduciaries as members of a putative "defendant class"—a measure that, if accepted, would bind those fiduciaries to any judgment in this litigation regarding AW's conduct, while depriving them of the opportunity to defend themselves on an individual basis regarding their unique decisions and distinctive decision-making processes.

Plaintiff's proposal cannot be accepted: Plaintiff's bid for a defendant class fails at the threshold because she lacks Article III standing to sue the putative members of that class. The new named Plaintiff, Ms. Theresa Brown, is the only named Plaintiff in this action, and is a participant in only one plan: the AW plan. The AW plan is the only plan whose expenses Ms. Brown helps pay, thus, the only plan whose fiduciaries could conceivably have harmed her, and therefore, the only plan whose sponsor she has standing to sue. As the Sixth Circuit has held, Rule 23 does not abrogate the principle that standing is a prerequisite to bringing suit, and "that a plaintiff cannot represent those having causes of action against other defendants against whom the plaintiff [herself] has no cause of action and from whose hands [s]he suffered no injury." *Thompson v. Board of Education of the Romeo Community Schools*, 709 F.2d 1200, 1204 (6th Cir. 1983) (citation omitted). Yet that is exactly what Plaintiff tries to do here.

Plaintiff attempts to invoke a seldom-applied exception to the above-described black-letter rule that is available only when "all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *Id.* at 1205. Her attempt fails, however, because, unlike the few cases in which that exception has been applied, she does not

2

and cannot allege *any* relationship—contractual, juridical or otherwise—among the putative defendant class members. All she asserts is that the putative defendant class members entered their plans into separate and distinct agreements with Nationwide, which, as the pleadings and materials incorporated therein show, differed on terms that are at the very heart of Plaintiff's claims. These separate and distinct agreements come nowhere close to juridically linking the putative defendant class members to each other such that the actions of one can be judged as the actions of each.

Because Plaintiff lacks standing to sue a class of defendants who have in no way injured her, her plaintiff class allegations—purportedly on behalf of plans as to which she is a complete stranger—must fall as well. The fiduciaries of thousands of stranger plans are plainly indispensable to claims concerning those plans, just as the Court has already found AW to be indispensable to claims involving the AW plan. In failing to join as defendants the fiduciaries of plans other than the AW plan, Plaintiff has failed to "join all necessary parties" for her multi-plan claims.

These are far from the only flaws in Plaintiff's bid for class certification, and, if required, Nationwide will address additional infirmities in response to any future motion for class certification. But the flaws identified herein are fundamental, apparent on the pleadings, and confirmed by the factual record that has been generated in response to Plaintiff's discovery requests and which her counsel has possessed for months. Accordingly, in the interest of judicial efficiency—and in light of the standing requirements of Article III—the Court should strike, with prejudice, the class allegations from the Second Amended Complaint.

## PROCEDURAL HISTORY

Alana Schmitt filed the initial Complaint in this matter on June 27, 2017, ECF No. 1, and the first Amended Complaint on July 5, 2017, ECF No. 8. The Amended Complaint asserted

that the fiduciaries of the AW plan and other plans violated one of ERISA's prohibited transaction provisions by retaining Nationwide as a plan service provider, and that Nationwide received excessive compensation as a result. *See generally id.* In addition to suing on her own behalf, Ms. Schmitt purported to sue on behalf of a class consisting of:

> The AW Plan and every other participant-directed individual account plan enrolled in the Nationwide Retirement Flexible Advantage Retirement Plans Program for which Defendants provides recordkeeping and other administrative services for an asset-based fee by charging the Plans and participant accounts an amount calculated as a percentage of the value of the participant's account invested in any particular investment fund, at any time from the earlier of (i) October 1, 2014; or (ii), in the event the Court determines that Defendants have concealed the facts and circumstances that would have apprised Plaintiff and the Class of the existence of Defendants' excessive compensation, the first date on which Defendants provided sufficient disclosure of their compensation for recordkeeping and administrative services, through the date of judgment (the "Class Period").

*Id.* ¶ 61. On September 18, 2017, Nationwide moved to dismiss the Amended Complaint, arguing, *inter alia*, that Ms. Schmitt's individual claim would rise and fall on whether AW—her plan's alleged fiduciary—breached its fiduciary duties, and that AW was, thus, a necessary party to the litigation. ECF No. 19 at 33-37; ECF No. 30 at 16-19.

On August 24, 2018, the Court issued an order denying Nationwide's motion to dismiss, but agreeing with Nationwide that AW is indispensable to Plaintiff's claims regarding the AW plan. ECF No. 46. The Court explained that AW's "interests are not adequately represented by Nationwide [because the] Court could theoretically determine … that [AW] breached its fiduciary duty to Ms. Schmitt and similarly situated retirement plan beneficiaries, but that Nationwide cannot be held liable because it lacked requisite knowledge or intent." *Id.* at 8. Accordingly, it gave Plaintiff three weeks to file a revised complaint "joining all necessary parties." *Id.* at 9.

On August 28, 2018, Theresa Brown moved to intervene and be named the lone Plaintiff in Ms. Schmitt's stead. ECF No. 51. She simultaneously filed a Second Amended Complaint,

4

ECF No. 52 ("SAC"). The SAC excludes from the putative plaintiff class plans with over $10 million in assets, and names AW as an additional defendant. *Id.* It does not, however, add as defendants the fiduciaries of any other plans. *Id.* Rather, it purports to assert claims on behalf of the putative plaintiff class against a putative defendant class (to ostensibly be represented by AW) consisting of sponsors of plans with less than $10 million in assets that participate in Nationwide's Flexible Advantage program. *See, e.g.*, *id.* ¶¶ 70-73. On October 1, 2018, the Court granted Ms. Brown's motion to intervene. ECF No. 53.

## STANDARD OF REVIEW

Rule 23 of the Federal Rules of Civil Procedure directs courts to determine "at an early practicable time" whether class treatment is appropriate, Fed. R. Civ. P. 23(c)(1)(A), and authorizes them to strike class allegations that are legally defective on the face of the complaint, Fed. R. Civ. P. 23(d)(1)(D) (court may "require that the pleadings be amended to eliminate allegations about representation of absent persons"). Thus, as the Sixth Circuit has recognized, a motion to strike class allegations is not premature merely because it comes before a plaintiff has filed a motion for class certification. *See, e.g.*, *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir.2011) (affirming the striking of class allegations and dismissal of suit prior to discovery, finding that the defect in the class allegations involved "a largely legal determination" that "no proffered or potential factual development offer[ed] any hope of altering").[4]

---

[4] *See also Loreto*; *Rikos*; *Bearden*; McLaughlin on Class Actions § 3:4 (15th ed. 2018) ("Most courts recognize that a motion to strike class action allegations may properly be filed before plaintiffs have filed a motion for class certification.").

**ARGUMENT**

I.  **THE COURT SHOULD STRIKE THE DEFENDANT CLASS ALLEGATIONS BECAUSE PLAINTIFF LACKS ARTICLE III STANDING TO SUE SPONSORS OF PLANS IN WHICH SHE WAS NOT HERSELF A PARTICIPANT**

Ms. Brown is the only named Plaintiff in this action, and is a participant in only one plan: the AW plan.  The AW plan is the only plan whose expenses Ms. Brown helps pay, thus, the only plan whose fiduciaries could conceivably have harmed her, and therefore, the only plan whose sponsor she has standing to sue.  The Court should strike her allegations against other plan sponsors—*viz.*, the absent members of the putative defendant class—accordingly.

The Sixth Circuit has made clear that "[s]tanding is a prerequisite to bringing suit, and [that] nothing in Fed. R. Civ. P. 23 alters this requirement."  *Thompson*, 709 F.2d at 1204. Consistent with that principle, it has adopted the rule "that a plaintiff 'cannot represent those having causes of action against other defendants against whom the plaintiff [herself] has no cause of action and from whose hands [s]he suffered no injury.'"  *Id.* (quoting *LaMar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 462 (9th Cir. 1973)).  Further, it has emphasized that "[t]his is true even though the plaintiff may have suffered an injury *identical* to that of the other parties he is representing."  *Id.* (emphasis added).  These concepts are directly applicable in this case. As noted, Ms. Brown herself has no possible claim against any plan sponsor other than the AW plan sponsor.  Yet she seeks to represent participants in *other plans* in advancing claims against those *other plans' sponsors*.  The standing requirements of Article III prevent her from doing so.

A.  **Plaintiff's Allegation That Plan Sponsors in the Putative Defendant Class Entered into Similar but Separate Contracts with Nationwide Does Not Establish a Juridical Relationship Among Those Sponsors**

Plaintiff tries to get around Article III of the United States Constitution by availing herself of a narrow exception to the above-described rule available only when "all defendants are juridically related in a manner that suggests a single resolution of the dispute would be

6

expeditious." *Id.* at 1205; *see* SAC ¶ 73.  But Plaintiff has not alleged, and cannot allege, any facts sufficient to establish any such "juridical" relationship.  The Sixth Circuit has explained that such a relationship is "most often found" in situations "[w]here all members of the defendant class are officials of a single state and are charged with enforcing or uniformly acting in accordance with a state statute, or common rule or practice of state-wide application, which is alleged to be unconstitutional."  *Thompson*, 709 F.2d at 1205.  Other courts have recognized such a relationship where defendant companies have "common ownership" "analogous to a partnership or joint enterprise," *Barker v. FSC Sec. Corp.,* 133 F.R.D. 548, 553 (W.D. Ark. 1989), where there is a "contractual obligation among all defendants," *Mull v. Alliance Mortg. Banking Corp.,* 219 F. Supp. 2d 895, 908 (E.D. Tenn. 2002), or similarly, "where all the defendants took part in a similar scheme that was sustained either by a contract or conspiracy, or was mandated by a uniform state rule," *Landmann v. Bann-Cor,* 2004 WL 1944789, at *3 (S.D. Ill. July 16, 2004) (citation omitted).  In other words, to establish the necessary "juridical" link, a plaintiff must allege that parallel conduct by the absent defendants has reinforced the alleged wrongs against her or stands in the way of complete relief.

Plaintiff has asserted no such circumstances.  Plaintiff does not allege that the putative defendant class members here are government officials or that they are enforcing a common statute or other government rule or policy.  Nor does she allege that they were partners, participants in a conspiracy or joint enterprise, or under common ownership.  Indeed, Plaintiff does not allege any sort of communication or coordination among or between the putative defendant class members whatsoever.  There is no juridical link among the fiduciaries to thousands of plans scattered across the country.

Plaintiff instead tries to pin her assertion of a juridical relationship solely on the allegation that "Defendant Class Members entered into agreements with Nationwide for the same or similar services, and the same questions concerning the fees charged by Nationwide apply to all Defendant Class Members."  SAC ¶ 73.  But asserting that the "Defendant Class Members" entered into similar but separate and unrelated contracts with Nationwide is a far cry from establishing "a contractual obligation among all defendants . . . which requires common action by defendants."  *Mull*, 219 F. Supp. 2d at 909.

The few cases discussing a common "contractual obligation" as a basis for finding a juridical relationship sufficient to allow a plaintiff to sue defendants who have not injured her frequently cite *United States v. Trucking Employers, Inc.*, 75 F.R.D. 682 (D.D.C. 1977).  *See, e.g.*, *Mull*, 219 F. Supp. 2d at 908 (citing *Trucking Employers*); *Street v. PSB Lending Corp.*, 2002 WL 1797773, at *13 (W.D. Tenn. July 31, 2002) (same).  There, the court found that defendant class members—various trucking companies that the United States and the Equal Employment Opportunity Commission sued for discriminatory employment practices—shared a juridical relationship because "each [was a] party to the National Master Freight Agreement or its area supplements" which "b[ound] the employment practices of the entire class in certain crucial respects."  *Trucking Emp'rs*, 75 F.R.D. at 689.  The plaintiffs challenged the allegedly common discriminatory employment practices of the defendant class members, which were traceable, at least in part, to the terms of the Freight Agreement under which all of the defendant class members were operating.  *Id.*

By contrast, Plaintiff does not allege any contractual relationship tying the putative defendant class members together here, or anything else binding them to each other such that the conduct of one can be judged as the conduct of each.  To the contrary, she admits that each plan

8

at issue had its own *separate* contract with Nationwide.  SAC ¶ 73.  Thus, Plaintiff does not allege a contractual obligation *among* the putative defendant class members at all.  She merely asserts that each of the subject plans sponsored by the putative defendant class had distinct but similar obligations to Nationwide (and that Nationwide had distinct but similar obligations to each plan).  Nationwide is aware of no case holding that the decisions by unrelated parties to enter into wholly separate agreements with the same vendor are enough to form a juridical link sufficient to dispense with the traditional requirement of personal standing as to each defendant.[5] Ultimately, Plaintiff's only available argument is that the existence of supposedly similar contracts creates similar facts for adjudication.  But as the Sixth Circuit made clear in *Thompson*, that is not enough.  709 F.2d at 1204 (allegation that "the plaintiff may have suffered an injury identical to that of the other parties he is representing" is insufficient to overcome failure to plead standing with respect to each defendant class member).

Plaintiff's attempt to base a juridical relationship on the putative defense class members' contracts with Nationwide is misplaced for the additional reason that her complaint does not challenge a course of conduct by plan fiduciaries that is traceable to a requirement in those contracts.  Rather, as Plaintiff herself admits in the SAC, she is challenging the decisions by the plan sponsors to *enter into* contracts with Nationwide in the first place.  *See* SAC ¶ 71(b)

---

[5] Certainly, *Thillens, Inc. v. Community Currency Exchange Association of Illinois, Inc.*, 97 F.R.D. 668 (N.D. Ill. 1983)—which Plaintiff cites in the SAC—does not so hold.  The plaintiff there did not face standing concerns, because, as the court emphasized, it alleged "that it [*had*] been injured by each member of the proposed defendant class."  *Id.* at 676.  That clearly is not the case here, *see supra*, at 6.  Indeed, if anything, *Thillens* supports Nationwide's motion as it makes clear the "great judicial reluctance to certify a defendant class when the action is brought by a plaintiff class" because of the "fear that each plaintiff member has not been injured by each defendant."  *Id.* at 675.  While the court did state in dicta that the defendant class was "juridically linked … by allegations that each defendant class member voluntarily joined a conspiracy to harm [the plaintiff]," *id.* at 676, Plaintiff alleges no such conspiracy here, or any interactions between or relationships whatsoever among the defendant class members, *see supra*, at 7.

(explaining that this case involves the question of "whether the fiduciaries of the Defendant Class' Plans breached their fiduciary duties to the Plans … by *entering into* a relationship with Nationwide" (emphasis added)); *id.* ¶ 91 ("Plaintiff further asks the Court to declare that the AW Plan and Defendant Class Members violated their fiduciaries duties as plan sponsors by *entering into* the agreements with Nationwide…." (emphasis added)).  Accordingly, even if there were some "contractual obligation among all defendants" (there is not), the conduct that Plaintiff is challenging—the execution of contracts authorizing Nationwide's fees—was not a "common action by defendants" required by any such contractual obligation.  *Mull,* 219 F. Supp. 2d at 909.[6]

### B. No "Juridical Relationship" Can Be Established Here for the Separate Reason That the Contracts at Issue Vary in Terms That Are Critical to Plaintiff's Claim

Even if the mere existence of similar contracts among unrelated parties were enough to establish a juridical relationship among the putative defendant class members (it is not), Plaintiff would still be unable to establish such a relationship here because, as the SAC and materials incorporated therein make clear, the contracts here actually vary in terms that are critical to Plaintiff's claim.  Plaintiff's core theory in the SAC is that the plan sponsors in the putative defendant class engaged in prohibited transactions by causing their plans to retain Nationwide's services at excessive rates.  But, as Nationwide made clear to Plaintiff's counsel months ago, the

---

[6] By seeking a declaration that the each of the thousands of putative defendant class members breached their fiduciary duties by retaining Nationwide's recordkeeping services, *see* SAC ¶ 91, Plaintiff necessarily asks this Court to examine the processes used by those thousands of members in *entering* those separate contracts.  *See Pfeil v. State St. Bank & Tr. Co.*, 806 F.3d 377, 384–85 (6th Cir. 2015) ("'The test for determining whether a fiduciary has satisfied his duty of prudence is whether the individual trustees, at the time they engaged in the challenged transactions, *employed the appropriate methods* to investigate the merits of the [transaction] and to structure the [transaction].'" (quoting other authority; emphasis added)).  Those processes also cannot be said to be a "common action by defendants" required by any "contractual obligation among all defendants," *Mull,* 219 F. Supp. 2d at 909.

fees that Nationwide charges for its services under the Flexible Advantage program vary significantly by plan.

While Plaintiff asserts that every plan bears a 100 basis point ("bp") fee for Nationwide's services, *see* SAC ¶ 35, that is not even true as to the AW plan. As Nationwide explained in its dismissal brief, for most investment options, the AW plan's contract with Nationwide specified a "Net Asset Fee" of 1.45% of the plan assets invested in that option (or 145 bps). ECF No. 19 at 16 (citing ECF No. 19-13 ("Program Agreement") at 15-44).[7] This consisted of Nationwide's own compensation—a base fee equal to 95 bps—as well as a 50 bp amount that Nationwide was authorized to pay on the Plan's behalf to Darnall Sikes Gardes & Frederick ("Darnall Sikes"), the Plan's "Authorized Representative," for Darnall Sikes' investment services to the plan. Program Agreement at 15-44, 84. The contract also authorized Nationwide to collect an "Administrative Fee" of 5 bps, and to remit that fee to Darnall Sikes for administrative services that Darnall Sikes provided the plan. *Id.* at 69. Nationwide later agreed to reduce the amount it charges for its own recordkeeping and administrative services from 95 bps to 45 bps. ECF No. 19-15 ("404(a)(5) Disclosure") at 11-12.[8]

---

[7] In some instances, the managers of individual investment options make payments to Nationwide based on plan participants' investments in those options. Program Agreement at 45. In such instances, Nationwide, through a Flexible Advantage feature known as "ClearCredit," reduces its base fee—and thus the Net Asset fee—even further by the rate of those payments. *Id.* at 15-45. The amount of ClearCredit in the AW plan ranges from 0 to 25 bps, depending on the investment options selected by Plan participants. *Id.*

[8] Unlike the AW plan's contract with Nationwide and quarterly statements generated for AW plan participants, the 404(a)(5) Disclosure made available by Nationwide to the plan's administrator reports the Administrative Fee as part of the Net Asset Fee. *Compare* 404(a)(5) Disclosure at 12-14 (disclosing Net Asset Fee of 1.00% for most options and stating, "AMC/Net Asset Fee may include an administrative fee which is charged by the third party administrator.") *with* ECF No. 19-16 ("Pl.'s Q4 2016 Statement") at 4 (stating that reported fund performance "reflects the underlying fund expenses and the deduction of Nationwide's standard asset fee of 0.95% for the mutual funds listed above in the Net Asset Fee column and an asset based plan administration fee of 0.05%.").

Those rates, however, did not apply uniformly to all plans participating in the Flexible Advantage Program—or even to all plans with $10 million or less in assets (the members of Plaintiff's purported class). As Nationwide explained in verified interrogatory responses served in February of this year, the fees that Nationwide charges for its services vary by plan based on a number of factors. Barrett Decl. Ex. 1, at 7-8.[9] As a result, and as illustrated in verified interrogatory responses that Nationwide subsequently served in May of this year, Nationwide's Net Asset Fee, gross of ClearCredits, also varies greatly among plans with less than $10 million in assets—for instance, the highest Net Asset Fee (gross of ClearCredits) among plans in this segment is an order of magnitude greater than the lowest Net Asset Fee (gross of ClearCredits) among the same plans. *Id.* Ex. 2 at 12, 15.[10] Thus, despite Plaintiff's effort to cast the various plans' contracts with Nationwide as "standard form contracts," SAC ¶ 71(d), the plans' agreements with Nationwide actually differ greatly on the term at the very heart of her claims.

The contracts also differ on other terms highly relevant to Plaintiff's claims. For example, Plaintiff asserts a theory in the SAC that Nationwide failed to fulfill its obligation to the AW Plan of providing information the plan administrator needed for certain regulatory filings. SAC ¶¶ 44-47. But not every contract—indeed not even the AW plan's contract—required Nationwide to provide this service. As explained in Nationwide's motion to dismiss,

---

[9] "Barrett Decl." refers to the Declaration of Shannon Barrett in Support of Defendant Nationwide's Motion to Strike the Class Allegations from the Second Amended Complaint, that Nationwide has moved the Court for leave to file under seal. ECF No. 61. The declaration attaches as exhibits Nationwide's verified responses to two of Plaintiff's interrogatories. *Id.* at 3. Those responses include, among other things, confidential information regarding the prices Nationwide charges for its services, including the range of Net Asset Fees (gross of Clear Credits) applicable to plans with less than $10 million in assets, and specific factors underlying differences in plan fees. As explained in Nationwide's motion for leave to file the responses under seal, this is confidential information that Nationwide does not publicly disclose, and the public disclosure of which would harm both Nationwide and its potential clients. *Id.*

[10] The exact range is listed in the cited verified interrogatory responses, which Nationwide has moved for leave to file under seal. *See supra* at n.9.

the AW plan's contract with Nationwide reflects that AW elected (but did not have to elect) the "No Custodial Reporting" option, which specifies that Nationwide is "under no obligation to prepare any reports" and if a report is requested it "will not include information necessary for completion of the Form 5500. ECF No. 19 at 25-26 (citing Program Agreement at 5). Similarly, Plaintiff asserts a theory that Nationwide Trust Company serves as a trustee for "many" of the plans but does not provide its trustee services adequately. SAC ¶¶ 54-55. Again, however, Nationwide is not contractually obliged to provide trustee services to every plan—and indeed, as also explained in Nationwide's motion to dismiss, did not even serve as trustee of the AW plan. ECF No. 19 at 27 (citing Program Agreement).

There is no legal basis to treat unrelated plans sponsors as "juridically related" merely because they entered into wholly unconnected agreements with Nationwide containing supposedly similar terms. And it would make no sense to do so where the agreements differ on terms that are central to Plaintiff's claims. The Court should strike the defendant class allegations from the SAC accordingly.

## II. THE COURT SHOULD STRIKE THE PLAINTIFF CLASS ALLEGATIONS IN LIGHT OF PLAINTIFF'S FAILURE TO ADD AS DEFENDANTS THE FIDUCIARIES OF THE PUTATIVE PLAINTIFF CLASS PLANS

The Court has already held that AW is an indispensable party under Rule 19 of the Federal Rules of Civil Procedure:

> The Court concludes that Andrus Wagstaff is an indispensable party under Rule 19. Its interests are not adequately represented by Nationwide because, although Nationwide and Andrus Wagstaff's interests are similar, they are not identical; this Court could theoretically determine at a future stage of litigation that Andrus Wagstaff breached its fiduciary duty to Ms. Schmitt and similarly situated retirement plan beneficiaries, but that Nationwide cannot be held liable because it lacked requisite knowledge or intent.

\*\*\*

13

> [Plaintiff] is **DIRECTED** to file an Amended Complaint joining all necessary
> parties no later than 21 days from the date of this order.

ECF No. 46 at 8-9. Based on the same logic, the fiduciaries of plans other than the AW plan are also indispensable to Plaintiff's claims concerning those fiduciaries' decisions to enter their plans into a contract with Nationwide. Indeed, by seeking certification of a defendant class, Plaintiff all but concedes this. Yet, in adding only AW, Plaintiff did not abide by the Court's order to "join all necessary parties." The Court should strike the plaintiff class allegations from the SAC accordingly.

Plaintiff's theory in this case is that the fiduciaries responsible for retaining Nationwide as a service provider for their respective plans violated the prohibited transaction provision in ERISA § 406(a)(1)(C) and that Nationwide benefitted from those alleged violations. Thus, for any plan included within the putative plaintiff class, Plaintiff's claim will rise or fall on whether the fiduciaries of that plan breached their fiduciary duties. In other words, and as explained in Nationwide's motion to dismiss, ECF No. 19 at 33-37, ECF No. 30 at 16-19, Plaintiff cannot—as a matter of law—obtain any relief against Nationwide without obtaining a judicial determination that the responsible plan fiduciaries violated ERISA's prohibited transaction provisions. *See* ECF No. 19 at 33-34 (arguing same); ECF No. 46 at 8 (recognizing Nationwide's argument that "the case 'rises and falls' on whether [AW] breached its fiduciary duties").[11]

---

[11] *See Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 245 (2000) ("§ 406(a) imposes a duty only on the fiduciary that causes the plan to engage in the transaction."); *Hans v. Tharaldson*, 2011 WL 7179644, at *16 (D.N.D. Oct. 31, 2011) (explaining that under *Harris Trust*, a plaintiff seeking to hold a non-fiduciary liable for participation in a prohibited transaction must establish "that the nonfiduciaries have actual or constructive knowledge that the fiduciary engaged in a prohibited transaction under § 406(a) that was not exempted under § 408(e)."); *Keach v. U.S. Tr. Co., N.A.*, 244 F. Supp. 2d 968, 976 (C.D. Ill. 2003) ("[T]here can be no liability of non-fiduciary parties-in-interest absent the existence of a prohibited transaction under § 406(a) which does not qualify for exemption under § 408(e)").

Just like AW, the fiduciaries of the other plans included in the putative plaintiff class would have an obvious interest in avoiding such a determination as to them. As Nationwide explained with respect to AW, these fiduciaries would face the risk of collateral estoppel if, contrary to this Court's conclusion, a court in a later action were to decide that they were in privity with Nationwide. *See* ECF No. 19 at 34-35; ECF No. 30 at 17; *see also* ECF No. 46 at 8 (recognizing Nationwide's argument that the Court's determination on whether "Andrus Wagstaff … breached its fiduciary duties … could bind Andrus Wagstaff [] in future litigation").[12] And, as Nationwide also explained with respect to AW, a determination that the fiduciaries of other plans violated fiduciary duties owed to their own employees could cause those fiduciaries significant professional and reputational harm—and pave the way for personal liability. *See* ECF No. 19 at 35; ECF No. 30 at 16; *see also* ECF No. 46 (recognizing Nationwide's argument that the Court's determination on whether "Andrus Wagstaff … breached its fiduciary duties … could harm Andrus Wagstaff's business interests as a law firm whose purpose it is to represent clients in a fiduciary capacity.")

Moreover, as with AW, a judgment against Nationwide concerning their plans would impair their fiduciary obligations to obtain necessary plan services. That is because, as Nationwide again explained with respect to AW, a determination by this Court that the fiduciary of any given plan was prohibited from retaining Nationwide at its negotiated fees would, as a

---

[12] *See Hawkins v. Czarnecki*, 142 F.3d 434, 1998 WL 57333, at *3 (6th Cir. Feb, 2 1998) ("Collateral estoppel can be used to bind a non-party to the prior suit [] if the non-party was in privity with a party to the prior action.") (emphasis in original); *Davidson Well Drilling, Ltd. v. Bristol-Meyers Squibb Co.*, 2009 WL 2135396, at *6 (S.D.N.Y. July 16, 2009) (holding both that defendant and unjoined entity did not have sufficiently identical interests to render unjoined entity unnecessary and that unjoined entity faced risk of collateral estoppel); *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 819-21 (9th Cir. 1985) (explaining that in determining whether joinder is required under Rule 19, courts "need not conclusively determine how collateral estoppel would operate in future litigation," as "Rule 19 speaks to possible harm, not only to certain harm" (quotations omitted; emphasis in original)).

15

practical matter, invalidate that plan's existing agreement with Nationwide. *See* ECF No. 19 at 35; ECF No. 30 at 18-19.[13] Such a holding would also severely constrain the fiduciary's ability to contract for services going forward, as the fiduciary would no longer be able to rely on the fiduciary process that led it to select Nationwide in the first place—despite the fiduciary having no opportunity to defend that process before this Court.[14]

As this Court has already recognized with respect to AW and the AW plan, the interests of a fiduciary to one of the plans in Plaintiff's purported class are not adequately represented by Nationwide. Nationwide cannot be held liable for its receipt of fees from plans absent a judicial determination that the fiduciaries of the respective plans violated their fiduciary duties; but a determination that the fiduciaries violated their duties would not necessarily result in liability

---

[13] *See Sch. Dist. of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 303 (6th Cir. 2009) (en banc) ("It is hornbook law that all parties to a contract are necessary in an action challenging its validity or interpretation."); *Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir. 1999) ("[A] district court cannot adjudicate an attack on the terms of a negotiated agreement without jurisdiction over the parties to that agreement."); *cf. Boles v. Greeneville Hous. Auth.*, 468 F.2d 476, 479 (6th Cir. 1972) (affirming dismissal of complaint for failure to join the Department of Housing and Urban Development ("HUD") as a necessary party on grounds that the plaintiffs' challenge to an "Urban Renewal Plan" approved by HUD "indirectly attack[ed] HUD's administrative decision approving the [p]lan" and that making "a determination [on the legality of the plan] without joining HUD [would] deprive it of the right to defend the integrity of its administrative decisions").

[14] Although, unlike AW, the fiduciaries of any other plans included within the putative plaintiff class would not be able to represent their own interests as parties, they would also be subject to necessary discovery into issues bearing on the reasonableness of their compensation decisions—including their efforts to assess the competitiveness of Nationwide's service offering, the factors they considered in making those assessments, and the pricing and bundles of services offered by other service providers for their respective plans. 29 C.F.R. § 2550.408c-2(b)(1) ("Generally, whether compensation is 'reasonable' under sections 408(b)(2) and 408(c)(2) … depends on the particular facts and circumstances of each case."); DOL Information Letter to D. Ceresi, Feb. 19, 1998, https://www.dol.gov/agencies/ebsa/employers-and-advisers/guidance/information-letters/02-19-1998 ("In selecting … any service provider under ERISA, the responsible plan fiduciary must engage in an objective process designed to elicit information necessary to assess the qualifications of the provider, the quality of services offered, and the reasonableness of the fees charged in light of the services provided.").

against Nationwide.  This Court should strike the plaintiff class allegations from the SAC accordingly.

**REQUEST FOR ORAL ARGUMENT**

Defendants submit that oral argument is warranted in light of the technical nature of Plaintiff's claims and the potential complexity of the issues involved.

**CONCLUSION**

For the reasons stated, the Court should strike, with prejudice, the class allegations from Plaintiffs' Second Amended Complaint, and order that the case should proceed as to Plaintiff's claims only.

Respectfully submitted,
/s/ Steven D. Forry_____
Steven D. Forry (0075520)
*Trial Attorney*
Ice Miller LLP
250 West Street
Columbus, Ohio 43215
Tel: (614) 462-2254
Fax: (614) 222-3435
Email: Steven.Forry@icemiller.com
*Counsel for Defendants Nationwide Life*
    *Insurance Company, Nationwide Bank, and*
    *Nationwide Trust Company, FSB*

**Co-Counsel**
Brian D. Boyle (D.C. #419773), admitted pro hac vice
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Tel:  (202) 383-5327
Fax: (202) 383-5414
Email:  bboyle@omm.com

Shannon M. Barrett  (D.C. #476866), admitted pro hac vice
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Tel:  (202) 383-5308
Fax: (202) 383-5414
Email:  sbarrett@omm.com

17

Meaghan VerGow (D.C. #977165), admitted pro hac vice
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Tel: (202) 383-5504
Fax: (202) 383-5414
Email: mvergow@omm.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document

was served on all counsel of record via the Court's CM/ECF filing system this 26th day of

November, 2018.

/s/ Steven D. Forry
Steven D. Forry (0075520)
*Trial Attorney*
Ice Miller LLP
250 West Street
Columbus, Ohio 43215
Tel: (614) 462-2254
Fax: (614) 222-3435
Email: Steven.Forry@icemiller.com
*Counsel for Defendants Nationwide Life*
    *Insurance Company, Nationwide Bank, and*
    *Nationwide Trust Company, FSB*