## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**THERESA BROWN**
Individually, and as a representative of
a class of participants and beneficiaries on
behalf of the Andrus Wagstaff, PC 401(k)
Profit Sharing Plan and all other similarly
Situated individual Retirement plans,

      **Plaintiff,**

    **v.**

**NATIONWIDE LIFE INSURANCE
COMPANY,** *et al.,*

    **AND**

**ANDRUS WAGSTAFF, PC**
Individually and on behalf of a class of
others similarly situated,

      **Defendants.**

**Case No. 2:17-cv-558**
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Chelsey M. Vascura**

## OPINION & ORDER

This matter is before the Court on Defendants Nationwide Life Insurance Company,

Nationwide Bank, and Nationwide Trust Company's (collectively "Nationwide") Motion to

Strike the Class Allegations from the Second Amended Complaint (ECF No. 62); Defendant

Andrus Wagstaff, PC's ("AW") Motion to Strike the Class Allegations from the Second

Amended Complaint (ECF No. 85); Named Plaintiff Theresa Brown's ("Plaintiff") Response in

Opposition to Nationwide's Motion to Strike (ECF No. 76); Plaintiff's Response in Opposition

to AW's Motion to Strike (ECF Nos. 91 &101[1]); and Nationwide and AW's ("Defendants")

Reply briefs (ECF Nos. 81 & 98).

Also before the Court is Plaintiff's Motion for Class Certification (ECF Nos. 115 &

120[2]); Nationwide's Response in Opposition to Plaintiff's Motion for Class Certification (ECF

Nos. 124 & 135[3]); AW's Response in Opposition to Plaintiff's Motion for Class Certification

(ECF Nos. 125 & 134[4]); and Plaintiff's Reply brief (ECF No. 137[5]). For the reasons that follow,

Defendants' Motions to Strike the Class Allegations from the Second Amended Complaint are

**DENIED as moot** (ECF Nos. 62 & 85); and Plaintiff's Motion for Class Certification is

**DENIED** (ECF Nos. 115 & 120).

## I.

On June 27, 2017, former Named Plaintiff Alana Schmitt ("Ms. Schmitt") commenced

this action on behalf of herself, other participants and beneficiaries of AW's 401(k) Profit

Sharing Plan ("the Plan"), and the participants and beneficiaries of similarly-situated individual

account plans. (*See generally* Compl., ECF No. 1). AW is the administrator and fiduciary of the

---

[1] Nationwide moved to seal Plaintiff's Response in Opposition to AW's Motion to Strike (ECF No. 91) because it contains Nationwide's confidential business information. (ECF No. 94). The Court conducted an *in camera* review of Nationwide's proposed redactions and set the matter for an informal conference between the parties. Plaintiff subsequently redacted the confidential sections as agreed and filed that version as ECF No. 101.
[2] With the Court's permission, Plaintiff filed her Motion for Class Certification (ECF No. 115) under seal because it contains information that Nationwide designated as confidential. Plaintiff appropriately redacted the confidential information and filed that version as ECF No. 120.
[3] On July 11, 2019, Defendants jointly moved for leave to file their Responses in Opposition to Plaintiff's Motion for Class Certification under seal. (ECF No. 122). The Court granted Defendants' joint motion on July 15, 2019. (ECF No. 123). Accordingly, Nationwide filed its Response in Opposition to Plaintiff's Motion for Class Certification (ECF No. 124) under seal. Nationwide subsequently redacted the confidential information and filed that version as ECF No. 135.
[4] AW filed its Response in Opposition to Plaintiff's Motion for Class Certification (ECF No. 125) under seal. AW subsequently redacted the confidential information and filed that version as ECF No. 134.
[5] On August 7, 2019, the Court granted Plaintiff's Unopposed Motion to File her Reply Under Seal. (ECF No. 131). The Court also ordered that Plaintiff file a redacted form of her Reply brief within 14 days of filing her Reply under seal. (*Id.*).

Plan, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA").
(*Id.*). To "navigate the labyrinth of federal regulations governing employee benefit plans," the
Plan contracted with Nationwide to provide recordkeeping and administrative services at a fee of
one percent of the value of each participant's account, per year. (*Id.* ¶ 1–2). According to Ms.
Schmitt, the Plan account charged "excessive and unreasonable fees." (*Id.* ¶ 11). Specifically,
Ms. Schmitt averred that "[b]y charging an asset[-]based fee which resulted in fees approaching
$500 per plan member, [Nationwide] received excessive and unreasonable compensation for
their services" in violation of 29 U.S.C. § 1106(a). (*Id.* ¶ 71–72).

On July 5, 2017, Ms. Schmitt filed an Amended Class Action Complaint against
Nationwide. (ECF No. 8). Nationwide moved to dismiss the Amended Complaint, alleging that
Ms. Schmitt failed to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6) and
failed to join AW as a necessary party under Rule 12(b)(7). (ECF No. 19). The Court denied
Plaintiff's Motion on August 24, 2018, and ordered Ms. Schmitt to amend the Amended
Complaint to name AW as a necessary party in the suit. (ECF No. 46). On September 28, 2018,
Theresa Brown ("Plaintiff") moved to intervene and assume the role of Named Plaintiff. (ECF
No. 51). That same day Plaintiff filed a Second Amended Complaint. (ECF No. 52). The Court
granted Plaintiff's Motion to Intervene on October 1, 2018. (ECF No. 53).

"Plaintiff seeks to certify this action as a class action under Fed. R. Civ. P. 23 on behalf
of the AW Plan and the [similarly situated] Plans and against both the Nationwide Defendants
and a class of Defendant Plan Sponsors." (Second Am. Compl. ¶ 66, ECF No. 52). In addition
to claiming that Nationwide charged excessive fees, Plaintiff contends that "confusing and
misleading information contained in Nationwide's 408b-2 disclosures" prevented AW and other
similarly-situated plan sponsors from "determin[ing] the true costs of the Nationwide Retirement

Flexible Advantage Retirement Plans Program to Plan participants." (Second Am. Compl. ¶¶ 53, 60). Plaintiff asserts: (1) an unjust enrichment claim against Nationwide for excessive compensation for services in violation of 29 U.S.C. §§ 1108(b)(2) and 1106(a)(1)(C); and (2) a claim for declaratory judgment stating that Nationwide's fees are unreasonable and that AW and the proposed Defendant Class breached their fiduciary duties by agreeing to pay excessive fees to Nationwide. (*Id.* ¶¶ 74–92). Plaintiff seeks: (1) certification of a Plaintiff Class; (2) certification of a Defendant Class; (3) declaratory judgment; (4) disgorgement by Nationwide of the excessive fees charged; (5) attorney's fees and costs; and (6) pre and post-judgment interest. (*Id.* at 30–31).

On November 26, 2018, Nationwide filed a Motion to Strike the Class Allegations from the Second Amended Complaint. (ECF No. 62). AW filed its own Motion to Strike the Class Allegations from the Second Amended Complaint on February 27, 2019. (ECF No. 85). Plaintiff responded (ECF Nos. 76, 91, 101), and Defendants replied (ECF Nos. 81 & 98). On June 14, 2019, Plaintiff moved for class certification of both a Plaintiff Class and a Defendant Class pursuant to Rule 23. (ECF Nos. 115 & 120). Defendants responded (ECF Nos. 124, 125, 134, 135), and Plaintiff replied (ECF No. 137). All motions are ripe for review.

## II.

Rule 23 governs class actions in federal court. Fed. R. Civ. P. 23(a). Generally, district courts have broad discretion in deciding whether to certify a class. *See In re Am. Med. Sys., Inc.*, 75 F3d 1069, 1079 (6th Cir. 1996). To obtain class certification, the putative class must establish four prerequisites pursuant to Rule 23(a): (1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4)

4

the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945 (6th Cir. 2011).

In addition, the party seeking class certification must demonstrate that the class action is maintainable under one of Rule 23(b)'s three provisions. Fed. R. Civ. P. 23(b); *see also Pilgrim*, 660 F.3d at 945. Notably, Rule 23 is more than a "mere pleading standard;" a party seeking class certification must demonstrate sufficient facts to meet its requirements. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Certification of a class is appropriate if, after conducting a "rigorous analysis" of the facts, the district court determines that the prerequisites of Rule 23 have been met. *Id.* at 350–51; Fed. R. Civ. P. 23(c)(1)(A).

The Court may not inquire into the merits at the class certification stage. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974) ("[w]e find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule"). Accordingly, the Court's rigorous analysis must be limited to the substance and structure of Plaintiff's claims. As the Sixth Circuit has stated, "[m]erits questions may be considered to the extent—*but only to the extent*—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1194–95 (2013) (emphasis in original)).

### III.

Plaintiff moves for class certification of both a Plaintiff Class and a Defendant Class. (Pl.'s Mot. for Class Cert. at 1, ECF No. 120). The putative classes are described as follows:

Plaintiff Class, represented by Theresa Brown:

All participant-directed individual 401(k) account plans that, at any time from
October 1, 2014 through the date of judgment (the "Class Period"), that (1) have
total Plan assets of less than $10 million; (2) paid Nationwide for recordkeeping
and other administrative services through the Nationwide Retirement Flexible
Advantage Retirement Plans Program; and (3) paid recordkeeping and
administrative service fees to Nationwide in excess of $64 per participant.
Excluded from the Plaintiff Class are employees of Plaintiff's law firms.

Defendant Class, represented by defendant Andrus Wagstaff, P.C.:

All sponsors of participant-directed individual 401(k) account plans that, at any
time from October 1, 2014 through the date of judgment (the "Class Period"), (1)
have total Plan assets of less than $10 million; (2) entered into Program
Agreements with Nationwide through the Nationwide Retirement Flexible
Advantage Retirement Plans Program to provide recordkeeping and
administrative services for their companies' defined contribution retirement plans;
and (3) paid recordkeeping and administrative service fees to Nationwide in
excess of $64 per participant.

(*Id.*). The Court will consider the certifiability of each proposed class in turn.

## A. Certification of Defendant Class

Rule 23 "authorizes defendant class actions as well as plaintiff class actions." *Alexander*

*Grant & Co. v. McAlister*, 116 F.R.D. 583, 585 (S.D. Ohio 1987) (citing *In re Itel Securities*

*Litigation*, 89 F.R.D. 104, 108 (N.D. Cal. 1981); *In re Consumers Power Company Securities*

*Litigation*, 105 F.R.D. 583, 611 (E.D. Mich. 1985); *In re Alexander Grant & Company*

*Litigation*, 110 F.R.D. 528, 533 (S.D. Fla. 1986)). The initial "burden of showing the

satisfaction of all four of the prerequisites of Rule 23(a) falls on the party seeking to utilize the

class action." *Id.* (citing *Senter v. General Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976)).

However, the Sixth Circuit has stated that: "[s]tanding is a prerequisite to bringing suit,

and [that] nothing in Fed. R. Civ. P. 23 alters this requirement." *Thompson v. Bd. of Educ. of*

*Romeo Cmty. Sch.*, 709 F.2d 1200, 1204 (6th Cir. 1983) (citing *La Mar v. H & B Novelty & Loan*

*Co.*, 489 F.2d 461, 462 (9th Cir. 1973)). Thus, a plaintiff generally "cannot represent those

[class members] having causes of action against other defendants against whom [that] plaintiff

6

has no cause of action and from whose hands [she] suffered no injury." *Id.* (quoting *La Mar*, 489 F.2d at 466).[6] "This is true even though the plaintiff may have suffered an injury identical to that of the other parties [she] is representing." *Id.* (quoting *La Mar*, 489 F.2d at 466); *see also In re Itel*, 89 F.R.D. at 119 ("class treatment is not proper unless each plaintiff class representative has a cause of action against each defendant, even though the plaintiffs were all injured by a method of dealing common to all defendants").[7]

The Sixth Circuit has recognized an exception to this general rule where "all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *Id.* at 1205; *see also Thillens, Inc. v. Cmty. Currency Exch. Ass'n of Ill., Inc.*, 97 F.R.D. 668, 673 (N.D. Ill. 1983) (the general rule that "[a] defendant class will not be certified unless each named plaintiff has a colorable claim against each defendant class member . . . may be waived where the defendant members are related by a conspiracy or 'juridical link'"); *In re Itel*, 89 F.R.D. at 120 ("[t]he exceptions to *La Mar*, however, (conspiracy or juridical links) should apply to defendant class certification as they do to plaintiff class certification"). According to the Sixth Circuit, this juridical relationship is "most often found" in instances

---

[6] *La Mar* addressed the appropriateness of certifying a plaintiff class, rather than a defendant class. *In re Itel*, 89 F.R.D. at 119. "Although the question has received little discussion, the rules of *La Mar* apparently should be applied to defendant class certifications." *Id.* In other words, defendant class certification is only proper where "the representative defendant is subject to liability to every plaintiff." *Id.* Because the parties address standing in the context of the Defendant Class, the Court will follow suit.

[7] The Court notes that the *La Mar* court premised its holding on the Rule 23(a)(3) and (4) requirements of typicality and adequacy of representation, rather than standing. *La Mar*, 489 F.2d at 466. In other words, the Ninth Circuit found that the representative party cannot be "typical of the class" where he "never had a claim of any type against any defendant." *Id.* at 465. Similarly, the *La Mar* court stated that the adequacy of representation "is particularly troublesome in class actions, such as these, in which the injury to any possible representative party is quite small." *Id.* "Nevertheless, the crux of the decision was that the exercise of judicial power is generally inappropriate in a case where the named plaintiffs do not have a cause of action against each defendant." *Thompson*, 709 F.2d at 1205 (quoting *Thompson v. Bd. of Educ. of Romeo Cmty. Sch.*, 71 F.R.D. 398, 407 (W.D. Mich. 1976)). Following Sixth Circuit precedent in *Thompson*, this Court considers the appropriateness of class certification in the context of standing before analyzing the Rule 23 factors.

"[w]here all members of the defendant class are officials of a single state and are charged with enforcing or uniformly acting in accordance with a state statute, or a common rule or practice of state-wide application, which is alleged to be unconstitutional." *Id.* (quoting *Mudd v. Busse*, 68 F.R.D. 522, 527–528 (N.D. Ind. 1975)).

Other districts have found that "[p]artnership, joint enterprise, control, conspiracy, and aiding and abetting all may serve as such a [juridical] link, since they denote some form of activity or association on the part of the defendants that warrants [the] imposition of joint liability against the group even though the plaintiff may have dealt primarily with a single member." *Akerman v. Oryx Comm., Inc.*, 609 F. Supp. 363, 375 (S.D.N.Y. 1984); *see also In re Itel*, 89 F.R.D. at 119 (juridical link may exist where the "proponent of the class action can allege a conspiracy or concerted scheme among the defendants"); *Barker v. FSC Sec. Corp.*, 133 F.R.d. 548, 553 (W.D. Ark. 1989) (finding a juridical link where there is a "contractual obligation among all defendants"); *Frazier v. Preferred Credit*, No. 01-2714 GB, 2002 WL 31039856, at *8 (W.D. Tenn. July 31, 2002) (holding same).

Plaintiff contends that "a juridical link exists among the [putative] Defendant Class members." (Pl.'s Mot. for Class Cert. at 28). Relying on *United States v. Trucking Emp'rs, Inc.*, 75 F.R.D. 682, 689–690 (D.D.C. 1977), Plaintiff points out that a juridical link may exist where contractual agreements bind the defendant class "in certain crucial respects," and where "the legality of certain provisions of these agreements is at issue in [the] case." (*Id.*). In *Trucking Employers*, the plaintiffs alleged that several hundred trucking firms across the United States engaged in discriminatory employment practices. *Trucking Emp'rs*, 75 F.R.D. at 685–687. Examining the proposed defendant class, D.C. Circuit found that each putative member was a party to the National Master Freight Agreement, which bound "the employment practices of the

entire class in certain crucial respects, e.g., with respect to seniority." *Id.* at 689. Because this bond "suggest[ed] to the court that in a practical sense [the putative defendant class members] themselves ha[d] elected to become a 'class,'" and the legality of the seniority provision was at issue, the Court found the defendants were juridically related. *Id.* at 689–690.

Analogizing *Trucking Employers* to the instant action, Plaintiff notes that all members of the proposed Defendant Class are "subject to a common rule or practice, namely ERISA's prohibition against paying excessive fees for administrative services." (Pl.'s Mot. for Class Cert. at 28). Plaintiff points out that all putative Defendant Class members signed Flexible Advantage Program Agreements with Nationwide which demanded excessive fee payments. (*Id.* at 29). In addition, Plaintiff claims that all putative Defendant Class members "received the same misleading disclosures regarding the 'reasonable estimate' of Nationwide's fees." (*Id.*). Thus, Plaintiff identifies the Flexible Advantage Program Agreements as the "juridical link that binds the Defendant Class members together." (*Id.*).

Nationwide argues that certification of a Defendant Class would be improper because "[P]laintiff does not and cannot allege any relationship—contractual, juridical or otherwise—among the putative defendant class members, and in fact none exists." (NW Opp'n to Pl.'s Mot. for Class Cert. at 15, ECF No. 135). First, Nationwide asserts that the putative Defendant Class members are not government officials, or otherwise "enforcing a common statute or other government rule or policy." (NW Mot. to Strike at 7, ECF No. 62).[8] Second, Nationwide points out that Defendants were not "partners, participants in a conspiracy or joint enterprise, or under common ownership." (*Id.*). Third, Nationwide avers that Plaintiff does not allege any "communication or coordination among or between the putative defendant class members."

[8] Nationwide incorporates by reference the arguments on pages 6–13 of its Motion to Strike. (NW Opp'n to Pl.'s Mot. for Class Cert. at 15).

(*Id.*). Finally, Nationwide contends there is no common contractual relationship between Defendants which binds them together. (*Id.* at 8).

Nationwide distinguishes *Trucking Employers* from the present facts, arguing that "enter[ing] into similar but separate and unrelated contracts with Nationwide is a far cry from establishing 'a contractual obligation among all defendants.'" (*Id.*) (quoting *Mull v. Alliance Mortg. Banking Corp.*, 219 F. Supp. 2d 895, 908 (E.D. Tenn. 2002)). Specifically, Nationwide maintains that the defendant class members in *Trucking Employers* were all "party to the National Master Freight Agreement or its area supplements." (*Id.*) (quoting *Trucking Emp'rs*, 75 F.R.D. at 689)). As a result, the Ninth Circuit found the alleged common discriminatory practice was "traceable, at least in part, to the terms of the Freight Agreement." (*Id.*). In contrast, Nationwide maintains that each Defendant in the putative class "had its own *separate* contract with Nationwide." (*Id.* at 9) (emphasis in original) (citing Second Am. Compl. ¶ 73). Because "each of the subject plans sponsored by the putative defendant class had similar but distinct obligations," Nationwide contends these "wholly separate agreements with the same vendor" are not sufficient to establish a juridical link. (*Id.*).

Moreover, Nationwide argues that Plaintiff does not challenge a specific provision in the Flexible Advantage Program Agreements. (*Id.*). Unlike the *Trucking Employers* plaintiffs who challenged a specific provision in a shared contract, Nationwide avers that, here, Plaintiff alleges that plan sponsors breached their fiduciary duties by "*entering into* the agreements with Nationwide." (*Id.* at 10) (emphasis added) (quoting Second Am. Compl. ¶ 91). Accordingly, Nationwide states that even if Defendants shared a common contractual agreement, their challenged conduct, i.e., entering into fee agreements with Nationwide, is not traceable to that contractual agreement. (*Id.*). Finally, Nationwide points out that the "contracts at issue vary in

10

terms that are critical to Plaintiff's claim." (*Id.*). For instance, Nationwide argues that not every

contract bears the same 100 basis point ("bp") fee; the same requirement to provide information

regarding certain regulatory filings; or the same obligation to provide trustee services to every

plan. (*Id.* at 11–13) (citing AW Program Agreement at 15–44 & 5, ECF No. 19-13). Thus,

Nationwide argues the Court should strike the Defendant Class allegations for failure to establish

a juridical link. (*Id.* at 13).[9]

Defendants' arguments are well taken. As noted by the Southern District of New York in

*Angel Music, Inc. v. ABC Sports, Inc.*, the juridical link doctrine "carve[s] out an exception for

defendant classes whose conduct is standardized by a common link to an agreement, contract or

enforced system which acts to standardize the factual underpinnings of the claims and to insure

the assertion of defenses common to the class." 112 F.R.D. 70, 77 (S.D.N.Y. 1986); *see also*

*Trucking Emp'rs*, 75 F.R.D. at 689 (finding a juridical link exists where "each member of the

defendant class provides an identical service, requires employees who possess identical skills,

and utilizes identical job classifications . . . [and] is a party to the National Master Freight

agreement or its area supplements").

Here, Nationwide points to a key distinction in the present facts versus those in *Trucking*

*Employers*. Plaintiff does not allege that all plan participants signed identical or standardized

contracts. In fact, Plaintiff alleges the putative Defendant Class Members "entered into

---

[9] AW adopts Nationwide's arguments by reference. (AW Opp'n to Pl.'s Mot. for Class Cert. at 4, ECF No. 134). In addition, AW contends that should the Court find a juridical link, and therefore conduct a full Rule 23 analysis, Defendant Class certification fails under Rule 23(a)(4). (*Id.* at 1). First, AW contends that making it "the unwilling representative of the putative defendant class would place [AW] in the unfair and untenable position of incurring the unbearable expense of defending thousands of unrelated plans or capitulating altogether." (*Id.* at 2). Second, AW argues that representing the Defendant Class would raise conflicts of interest. (*Id.* at 3). For instance, if AW highlights the particular qualifications and investigative efforts of its own advisors, it could simultaneously undercut the due diligence of other plan sponsors. (*Id.* at 9). Consequently, AW maintains that it could not adequately represent the interests of the Defendant Class. (*Id.* at 1).

*agreements* with Nationwide for *the same or similar services*." (Second Am. Compl. ¶ 73)
(emphasis added). Moreover, Nationwide points out that plan agreements varied based on the
information and services provided. (NW Mot. to Strike at 11–13) (citing AW Program
Agreement). Thus, Plaintiff's alleged injury, i.e., excessive fees, is not traceable to a specific
provision in a shared contract. Furthermore, Plaintiff presents no evidence to suggest that
Defendants acted in concert when investigating the terms of their proposed plan agreements.
Rather, AW represents that it "knows the process that it undertook in selecting Nationwide and
evaluating Nationwide's fees . . . [b]ut it and its counsel have absolutely no idea what steps the
sponsors of the thousands of other plans took in the same vein." (AW Opp'n to Pl.'s Mot. for
Class Cert. at 2). Accordingly, the parties did not standardize their conduct by contracting with
Nationwide as part of a joint enterprise.

  In sum, the Court finds the putative Defendant Class members do not share a juridical
link. As a result, Plaintiff lacks standing to sue each Defendant, and Rule 23 certification of the
putative Defendant Class would be improper. Because class certification fails on the issue of
standing, the Court declines to analyze the Rule 23(a) and (b) factors with respect to the
Defendant Class. The Court **DENIES** Plaintiff's Motion for Class Certification with respect to
the Defendant Class.

**B. Certification of Plaintiff Class**

  Plaintiff does not address standing in the context of Plaintiff Class certification. (*See
generally* Pl.'s Mot. for Class Cert.). Instead, Plaintiff asserts that the putative Plaintiff Class
satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy. (*Id.* at
13–20). In addition, Plaintiff maintains that the putative Plaintiff Class would be manageable

pursuant to Rules 23(b)(1) or (b)(3).[10] Nationwide claims that the "fiduciaries of the putative

plaintiff class plans are plainly indispensable to claims alleging they have violated ERISA, just

as the Court has already found AW to be indispensable to claims involving the AW plan." (NW

Opp'n to Pl.'s Mot. for Class Cert. at 15). Thus, Nationwide contends that "because Plaintiff

lacks standing to sue a class of *defendants* who have in no way injured her, her *plaintiff* class

allegations—on behalf of plans as to which she is a complete stranger—fail as well." (*Id.*)

(citing NW Mot. to Strike at 13–17) (emphasis in original). AW asserts the same arguments,

stating that "the unavailability of a defendant class makes Plaintiff's proposed plaintiff class

untenable as well." (AW Opp'n to Pl.'s Mot. for Class Cert. at 5).

 The Court agrees with Defendants. In its August 24, 2018 Opinion and Order, this Court

held that AW, as Plaintiff's fiduciary, is an indispensable party pursuant to Rule 19. (Op. & Or.

8, ECF No. 46). The Court noted that, "although Nationwide and [AW's] interests are similar,

they are not identical." (*Id.*). Accordingly, the Court found that Nationwide could not

adequately protect AW's interests in AW's absence. (*Id.*). By that same logic, the similarly-

situated plan sponsors who acted as fiduciaries to the putative Plaintiff Class members (i.e., the

putative Defendant Class members) are also indispensable parties in the proposed class action.

As these fiduciaries are indispensable parties, the putative Plaintiff class cannot proceed against

Nationwide as the sole class action defendant.

 Nor can the putative Plaintiff Class proceed against Nationwide, AW, and all similarly-

situated plan sponsors (i.e., putative Defendant Class members). In *Thompson*, pregnant

---

[10] "Rule 23(b)(1) is satisfied if prosecuting separate actions would create a risk of inconsistent or varying adjudications that would establish incompatible standards for the defendants or that would be dispositive of the interests of non-party class members. Rule 23(b)(3) is satisfied if (1) common questions predominate over any questions affecting only individual members; and (2) class resolution is superior to other available methods for the fair adjudication of the controversy." (Pl.'s Mot. for Class Cert. at 21) (citing Fed. R. Civ. P. 23(b)).

teachers brought a Title VII action against approximately 500 school boards alleging discrimination on the basis of sex. 709 F.2d at 1202. The Sixth Circuit reversed the district court's decision to certify both a plaintiff class and a defendant class, finding that "this case does not fall within the second *La Mar* [juridical link] exception, and that the plaintiffs as a class do not have standing." *Id.* at 1205. In particular, the *Thompson* court noted:

> We reemphasize that this case does not involve a state statute or uniform policy being applied statewide by the defendants. Each school board adopted its own maternity leave policies to be applied to the teachers within that particular school district. A separate determination will have to be made by the district court with respect to each set of policies to decide whether, in fact, they treated pregnancy differently from other temporarily disabling conditions. This type of situation does not involve defendants that are 'juridically related in a manner that suggests a single resolution of the dispute would be expeditious.'"

*Id.* (quoting *La Mar*, 489 F.2d at 466). The Sixth Circuit cited *Vulcan Society v. Fire Dept. of City of White Plains*, 82 F.R.D. 379 (S.D.N.Y. 1979), in which several black firefighters sued various townships alleging employment discrimination. *Thompson*, 709 F.2d at 1205. The Southern District of New York denied certification of a plaintiff class, stating that "the individual plaintiffs had no cause of action or standing against those municipalities for which they had not worked." *Id.* (citing *Vulcan*, 82 F.R.D. at 398–399).

As noted *supra*, this case presents analogous facts. Plaintiff can only assert a cause of action against Nationwide and her plan sponsor, AW. Likewise, each of the 250,000 putative Plaintiff Class members can only assert causes of action against Nationwide and their individual plan sponsors. In other words, those putative Plaintiff Class members who did not utilize AW as a fiduciary lack standing to bring claims against AW. Moreover, like the school boards in *Thompson*, each plan sponsor negotiated its own distinct contract with Nationwide. Thus, the juridical link exception articulated in *La Mar* does not apply. Because the putative Plaintiff

14

Class lacks standing to sue AW and all similarly-situated plan sponsors, the Court **DENIES** Plaintiff's Motion for Class Certification with respect to the Plaintiff Class.

### IV.

Both Nationwide and AW previously filed Motions to Strike the Class Allegations from the Second Amended Complaint. (ECF Nos. 62 & 85). A court may strike class action allegations prior to a motion for class certification "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Loreto v. Proctor & Gamble Co.*, No. 1:09-cv-815, 2013 WL 6055401, at *2 (S.D. Ohio Nov. 15, 2013) (citing *Pilgrim*, 660 F.3d at 945). The Court denied Plaintiff's Motion for Class Certification in this Opinion and Order. Accordingly, Defendants' Motions to Strike are **DENIED as moot**.

### V.

For the reasons stated above, Defendants' Motions to Strike the Class Allegations from the Second Amended Complaint are **DENIED as moot** (ECF Nos. 62 & 85), and Plaintiff's Motion for Class Certification is **DENIED** (ECF Nos. 115 & 120).

**IT IS SO ORDERED.**

9 - 19 - 2019

**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**